**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| KATHLEEN VITA,<br><br>                Plaintiff,<br><br>v.<br><br>BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS, INC. and BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS HMO BLUE, INC.,<br><br>                Defendants. | Case No. 1:25-cv-10420-LTS |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................................... 1

II.     FACTUAL BACKGROUND ........................................................................................... 2

        A.      Plaintiff's Claims Arise from Alleged Visits to the BCBSMA Website. .............. 2

        B.      BCBSMA's Website Disclosed the Challenged Activity. .................................... 3

III.    STANDARD OF REVIEW ............................................................................................. 4

IV.     ARGUMENT ................................................................................................................... 4

        A.      Plaintiff Fails to State a Claim for Violation of the ECPA (Count I). .................. 4

                1.      The Complaint Lacks Allegations About Plaintiff's Experience. ............ 4
                2.      Plaintiff Fails to Allege an Unlawful Interception, Since
                        Defendants Could Not Intercept Their Own Communication. ................. 5
                3.      Plaintiff Fails to Allege Any Plausible Interception of "
                        Contents." ............................................................................................... 7
                4.      Plaintiff Fails to Allege Use of a "Device." ............................................ 8

        B.      Plaintiff Fails to Allege a Chapter 93A Claim (Count II). ................................... 9

                1.      BCBSMA Is Not Engaged In Trade or Commerce. ................................. 9
                2.      Plaintiff Has Not Alleged Any Unfair or Deceptive Conduct or
                        Any Actual Loss or Injury. ..................................................................... 11
                3.      Plaintiff Failed to Serve a Compliant Demand Letter. ........................... 12

        C.      Plaintiff Fails to Allege a Massachusetts Privacy Act Claim (Count III). ........... 13

        D.      Plaintiff Fails to Allege Breach of Fiduciary Duty (Count IV). .......................... 14

        E.      Plaintiff Fails to Allege Negligence (Count V). ................................................. 14

                1.      Plaintiff's Claims Are Barred by the Economic Loss Doctrine. ............. 15
                2.      Plaintiff Fails to Plead Facts Giving Rise to a Duty Owed by
                        BCBSMA. .............................................................................................. 15
                3.      Plaintiff Fails to Allege Causation. ......................................................... 16
                4.      Plaintiff Fails to Allege She Suffered Actual Harm. ............................... 17

        F.      Plaintiff's Breach of Confidence Claim Fails (Count VI). .................................. 17

        G.      Plaintiff Fails to Allege Facts to Support a Breach of Contract Claim
                (Count VII). ....................................................................................................... 18

        H.      Plaintiff Cannot State a Claim for Unjust Enrichment (Count VIII). .................. 19

V.      CONCLUSION ............................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*All Seasons Servs., Inc. v. Comm'r of Health and Hosps. of Bos.*,
620 N.E.2d 778 (Mass. 1993) ...................................................................................................9

*Am. Hops. Ass'n v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. June 20, 2024) .......................................................................7

*ARK Nat'l Holdings LLC v. We Campaign LLC*,
No. CV 21-10893-RGS, 2021 WL 5918682 (D. Mass. Dec. 15, 2021) ............................19, 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................................4

*Bazinet v. Beth Israel Lahey Health, Inc.*,
113 F.4th 9 (1st Cir. 2024).......................................................................................................4

*Blue Cross & Blue Shield of Mass, Inc. v. Flexible Fundamentals, Inc.*,
2184CV00126, 2023 Mass. Super. LEXIS 40 (Mass. Super. Ct. May 3, 2023) ................4, 10

*Borden v. Betty Gibson Assoc., Inc.*,
574 N.E.2d 1020 (Mass. App. Ct. 1991) ................................................................................17

*Cape Cod ASC, LLC v. Bentivegna*,
No. 2008457, 2010 WL 3038824 (Mass. Super. Ct. July 1, 2010) ........................................14

*Carmack v. Nat'l R.R. Passenger Corp.*,
486 F. Supp. 2d 58 (D. Mass. 2007).......................................................................................13

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010)........................................................................................................6

*Chiste v. Hotels.com L.P.*,
756 F. Supp. 2d 382 (S.D.N.Y. 2010).....................................................................................14

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023)........................................................................................8

*Cumis Ins. Soc., Inc. v. BJ's Wholesale Club, Inc.*,
918 N.E.2d 36 (Mass. 2009) ..................................................................................................15

*Da Silva v. U.S. Bank, N.A.*,
885 F. Supp. 2d 500 (D. Mass. 2012)......................................................................................13

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Durbeck v. Suffolk Univ.*,
   547 F. Supp. 3d 133 (D. Mass. 2021) ....................................................................................18

*Est. of Smith v. Raytheon Co.*,
   573 F. Supp. 3d 487 (D. Mass. 2021) ......................................................................................3

*Fitzhugh v. HSBC Bank USA, Nat'l Assoc.*,
   No. CV 19-12394-FDS, 2020 WL 7075123 (D. Mass. Dec. 3, 2020) ....................................12

*In re Amitiza Antitrust Litig.*,
   No. 21-CV-11057-MJJ, 2024 WL 4250224 (D. Mass. Aug. 21, 2024), *report and
   recommendation adopted as modified*, No. 21-CV-11057-MJJ, 2024 WL 4344887
   (D. Mass. Sept. 30, 2024) ......................................................................................................10

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
   806 F.3d 125 (3d Cir. 2015)..................................................................................................6, 7

*In re Lorazepam & Clorazepate Antitrust Litig.*,
   295 F. Supp. 2d 30 (D.D.C. 2003).........................................................................................10

*In re Nickelodeon Consumer Priv. Litig.*,
   827 F.3d 262 (3d Cir. 2016).....................................................................................................6

*In re Pharm. Average Wholesale Price Litig.*,
   491 F. Supp. 2d 20 (D. Mass. 2007), *aff'd on other grounds*, 582 F.3d 156 (1st Cir. 2009) ..10

*In re Shields Health Care Grp., Inc. Data Breach Litig.*,
   721 F. Supp. 3d 152 (D. Mass. 2024) ....................................................................................15

*In re TJX Cos. Retail Sec. Breach Litig.*,
   564 F.3d 489 (1st Cir. 2009)..................................................................................................15

*In re Zynga Privacy Litig.*,
   750 F.3d 1098 (9th Cir. 2014) .................................................................................................7

*Jacome v. Spirit Airlines Inc.*,
   No. 2021-000947-CA-01, 2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021)............................8

*Juliano v. Simpson*,
   962 N.E.2d 175 (Mass. 2012) ................................................................................................16

*Katz-Lacabe v. Oracle Am.*,
   668 F. Supp. 3d 928 (N.D. Cal. 2023) .....................................................................................6

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Koppel v. Moses*,
No. CV 20-11479-LTS, 2020 WL 6292871 (D. Mass. Oct. 27, 2020) ...................................14

*Linkage Corp. v. Trustees of Boston Univ.*,
679 N.E.2d 191 (Mass. 1997)....................................................................................................9

*McDermet v. DirecTV, LLC*,
No. CV 19-11322-FDS, 2021 WL 217336................................................................................12

*Mulder v. Kohl's Dep't Stores, Inc.*,
865 F.3d 17 (1st Cir. 2017)........................................................................................................9

*Okash v. Essentia Health*,
No. CV 23-482, 2024 WL 1285779 (D. Minn. Mar. 26, 2024)..................................................7

*Portier v. NEO Tech. Sols.*,
No. 3:17-CV-30111-TSH, 2019 WL 7946103 (D. Mass. Dec. 31, 2019)...............................17

*Potter v. Havlicek*,
No. 06-CV-211, 2008 WL 2556723 (S.D. Ohio June 23, 2008) ...............................................8

*Rafferty v. Merck & Co., Inc.*,
92 N.E.3d 1205 (Mass. 2018)....................................................................................................9

*Roe No. 1 v. Children's Hosp. Med. Ctr.*,
16 N.E.3d 1044 (Mass. 2014)..................................................................................................16

*Santos v. U.S. Bank Natl'l Ass'n*,
54 N.E.3d 548 (Mass. App. Ct. 2016) .....................................................................................15

*SEC v. Tambone*,
597 F.3d 436 (1st Cir. 2010)......................................................................................................4

*Smart v. Main Line Health*,
No. 22-5239, 2024 WL 2943760 (E.D. Pa. June 10, 2024)......................................................8

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ................................................................................................12

*Spencer v. Roche*,
755 F. Supp. 2d 250 (D. Mass. 2010), *aff'd*, 659 F.3d 142 (1st Cir. 2011).............................17

*Steinberg v. CVS Caremark Corp.*,
899 F. Supp. 2d 331(E.D. Pa. 2012) .......................................................................................17

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Syzmanski v. Boston Mut. Life Ins. Co.*,
778 N.E.2d 16 (Mass. App. Ct. 2002) ....................................................................................14

*Tedeschi-Freij v. Percy Law Grp.*,
172 N.E.3d 774 (Mass. App. Ct. 2021) ..................................................................................19

*Thrivent Fin. For Lutherans v. Strojny*,
882 F. Supp. 2d 260 (D. Mass. 2012) ...............................................................................14, 15

*Trustees of Boston Univ. v. AMS Comm'ns, Inc.*,
33 F. Supp. 2d 66 (D. Mass. 1998) ..........................................................................................9

*Tyler v. Michaels Stores, Inc.*,
840 F. Supp. 2d 438 (D. Mass. 2012) .....................................................................................20

*Vacca v. Bringham & Women's Hosp., Inc.*,
156 N.E.3d 800 (Mass. App. Ct. 2020) ..................................................................................19

*Weekes v. Cohen Cleary P.C.*,
723 F. Supp. 3d 97 (D. Mass. 2024) ..................................................................................18, 19

*Wightman v. Blue Cross Blue Shield of Mass.*,
No. 2183CV0113A, Slip Op. (Mass. Super. Ct. Sept. 20, 2021) ............................................11

*Williams v. TMC Health*,
No. CV-23-00434, 2024 WL 4364150 (D. Ariz. Sept. 30, 2024) ...........................................16

*Wood v. City of Haverhill*,
No. 1:23-CV-12377-JEK, 2024 WL 4189932 (D. Mass. Sept. 13, 2024) .................................5

*Zoll Med. Corp. v. Barracuda Networks, Inc.*,
565 F. Supp. 3d 101 (D. Mass. 2021) .....................................................................................15

**STATUTES**

18 U.S.C. § 2510(8) .......................................................................................................................7

18 U.S.C. § 2511(2)(d) ...............................................................................................................5, 6

M.G.L. c. 93A, §2(a).......................................................................................................................9

M.G.L. c. 93A, § 9(3) .................................................................................................................9, 12

M.G.L. c. 111 § 70E ......................................................................................................................16

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

M.G.L. c. 176A, § 19 ..................................................................................................................10

M.G.L. c. 176B, § 14 ..................................................................................................................10

M.G.L. c. 214, § 1B ....................................................................................................................13

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 9(b)..............................................................................................9

Google Privacy & Terms, https://policies.google.com/technologies/partner-sites........................12

Meta Privacy Policy, https://www.facebook.com/privacy/policy/ ................................................12

Rule 12(b)(6)...................................................................................................................................4

## I.    INTRODUCTION

This lawsuit seeks to challenge the use of ubiquitous website technology that Plaintiff acknowledges is designed to improve functionality, marketing efforts, and the user experience. Specifically, Kathleen Vita, a repeat plaintiff, attempts to assert eight causes of action based on the alleged use by Blue Cross and Blue Shield of Massachusetts, Inc. and Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc. (together, "BCBSMA") of website "tracking technologies" provided by Google, Meta, or other third parties.[1] In doing so, Plaintiff attempts to fit the proverbial square peg in a round hole. As a consequence, the Amended Complaint is devoid of supporting factual allegations and fails to state any viable claims.

Plaintiff alleges almost nothing about her own experience on BCBSMA's website. Despite this information being within the scope of Plaintiff's personal knowledge, the Amended Complaint fails to allege what she specifically did on BCBSMA's website; where on the website she did it; when she specifically did it; what particular information any third party purportedly received from Plaintiff or where they received it; or even what Plaintiff observed on BCBSMA's website. Plaintiff also fails to allege any facts regarding any specific information of hers was allegedly

---

[1] This action is one of several copycat putative class actions filed in Massachusetts, including multiple cases pending in the District of Massachusetts. *See, e.g.*, *Vita v. New England Baptist Hosp.*, No. 2384CV00857 (Mass. Super. Ct. Apr. 7, 2023); *Nova v. Boston Med. Ctr. Corp.*, No. 1:25-cv-10105-GAO (D. Mass. Jan 14, 2025); *McManus v. Tufts Med. Ctr., Inc.*, No. 1:25-cv-10008-ADB (D. Mass. Jan. 2, 2025); *Doe v. Lawrence General Hosp.*, No. 1:25-cv-10081-NMG (D. Mass. Jan. 13, 2025); *Doe v. Atrius Health, Inc.*, No. 1:22-cv-12196-FDS (D. Mass. Dec. 23, 2022); *Vita v. Beth Israel Deaconess Med. Ctr., Inc.*, No. 2384CV00480 (Mass. Super. Ct. Feb. 24, 2023); *Doe v. Children's Hosp. Corp.*, No. 1:25-cv-10343-PBS (D. Mass. Feb. 10, 2025); *Progrin v. UMass Memorial Health Care, Inc.*, No. 2284CV02889 (Mass. Super. Ct. Dec. 20, 2022). Notably, every other defendant in these copycat actions is a hospital or healthcare system, whereas BCBSMA is the lone insurer defendant. The information exchanged through hospital systems' websites—where patients may communicate with health care providers regarding appointments, diagnoses, symptoms, medication and treatment—is materially distinct, making BCBSMA differently situated in terms of alleged website operations and interaction.

disclosed to, or used by, third parties.[2] As a result of her abject pleading deficiencies, Plaintiff fails to plausibly allege any of the eight claims she asserts.

Beyond the failure to allege facts to support her claims, Plaintiff's causes of action suffer from legal deficiencies that compel their dismissal. Notably Plaintiff's ECPA claim fails because, *inter alia,* the ECPA permits a direct party like BCBSMA to "intercept" its own communications with or without Plaintiff's consent. Plaintiff's Chapter 93A claim also cannot survive a motion to dismiss: as a nonprofit organization, BCBMSA cannot be held liable under Chapter 93A. For these reasons, and others explained below, the Amended Complaint should be dismissed with prejudice.

## II.    FACTUAL BACKGROUND

### A.    Plaintiff's Claims Arise from Alleged Visits to the BCBSMA Website.

Both Defendants are not-for-profit corporations organized under Massachusetts law as charitable organizations. AC ¶¶ 14-15. Plaintiff alleges that she "obtains health insurance from BCBS-MA" and, at a general level, that she "regularly used the BCBS-MA Website to obtain information about her health insurance benefits, including by accessing the MyBlue patient portal." *Id.* ¶ 11. Despite devoting over 20 pages of the Amended Complaint to describing BCBSMA's website, Plaintiff admits that she "does not describe in this complaint the specific pages she visited." *Id.* ¶ 83. Plaintiff summarily alleges that BCBSMA "aided in the interception" of "communications between Plaintiff and other Class Members" and BCBSMA's website by "Google, Facebook, . . . Twitter, LinkedIn, and other companies that provide so-called 'tracking technologies.'" *Id.* ¶ 1.

Plaintiff claims that her "electronic communications" with BCBSMA "were secretly and

---

[2] These pleading shortcomings appear calculated as Plaintiff concedes that some of the purported technology at issue ceased to operate on BCBSMA's website long before Plaintiff filed the Complaint. *See* Doc. No. 1-1, Amended Complaint ("AC") ¶ 66

contemporaneously intercepted, recorded, and transmitted to" third parties including Google, Facebook, and others without her consent, and that she later received "unwanted targeted advertisements." *Id.* ¶¶ 2, 6. According to Plaintiff's conclusory allegations, "the tracking technologies BCBS-MA injected onto its website were designed to permit third parties such as Google, Facebook, Twitter, LinkedIn, and other companies to intercept the contents of the website user's communications with BCBS-MA and associate those intercepted communications with the user's real-world identities known to Google, Facebook, and other third parties." *Id.* ¶ 29.

Based on these formulaic allegations, Plaintiff brought this putative class action on behalf of herself and a proposed class of certain  Massachusetts residents that "accessed any portion of the website at bluecrossma.org" purporting to assert the following claims: (1) violation of the Electronic Communication Privacy Act; (2) violation of Chapter 93A; (3) violation of the Massachusetts Right to Privacy Act; (4) breach of fiduciary duty; (5) negligence; (6) breach of confidence; (7) breach of contract; and (8) unjust enrichment. *Id.* ¶¶ 158-245.

### B.    BCBSMA's Website Disclosed the Challenged Activity.

At all relevant times, BCBSMA's Privacy Policy disclosed that BCBSMA collects and may share data regarding user interactions with the BCBSMA website. Ex. A to Decl. of Vanessa Lester ("Lester Decl."), attached as Ex. 1.[3]  Specifically, the Privacy Policy disclosed that:

> We automatically collect some statistical data as you browse our websites. For example, we automatically collect your Internet protocol (IP) address used to connect your computer to the Internet, browser type and version, operating system and platform, average time spent on our site, pages viewed, information searched for, access times, [and] clickstream data.

> If you choose to provide us with personal information over the Internet . . . we collect the information that you provide to us. We use this information when you register with us over the Internet to maintain, improve, and administer our website, operate our business, provide

---

[3] The Court may properly consider BCBSMA's Privacy Policy, which is referenced and quoted in the Complaint. *See* AC ¶¶ 28-32; *Est. of Smith v. Raytheon Co.*, 573 F. Supp. 3d 487, 498 (D. Mass. 2021).

products and services you request, administer your account, inform you about products and services that might be of interest to you, and personalize your online experience. . . .

To carry out certain business functions, we sometimes hire other companies to perform services on our behalf. We may disclose this personal information . . . to these companies to enable them to perform these services, but they're required to safeguard this data and are generally not authorized to use it for any other purpose than completing their contractual requirements to [BCBSMA].

*Id.* At all relevant times, a link to BCBSMA's Privacy Policy appeared at the bottom of every web page on BCBSMA's website. *See* https://www.bluecrossma.org/ (last visited March 7, 2025).

## III.    STANDARD OF REVIEW

On a motion to dismiss under Rule 12(b)(6), a court must assess whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (citing *Twombly*, 550 U.S. at 555). Courts must, likewise, "ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Bazinet v. Beth Israel Lahey Health, Inc.*, 113 F.4th 9, 15 (1st Cir. 2024) (citation omitted). "

## IV.    ARGUMENT

### A.    Plaintiff Fails to State a Claim for Violation of the ECPA (Count I).

#### 1.    The Complaint Lacks Allegations About Plaintiff's Experience.

To avoid dismissal under the Electronic Communications Privacy Act ("ECPA"), Plaintiff must plead facts showing that BCBSMA "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic

communication (5) using a device and (6) that the communication was intercepted contemporaneously." *Wood v. City of Haverhill*, No. 1:23-CV-12377-JEK, 2024 WL 4189932, at *16 (D. Mass. Sept. 13, 2024) (quoting *In re Pharmatrak, Inc.*, 329 F.3d 9, 18 (1st Cir. 2003) & *Boudreau v. Lussier*, 901 F.3d 65, 78 (1st Cir. 2018)) (internal quotes and citations omitted).

Plaintiff fails to plausibly state a claim under the ECPA because, among other things, the Amended Complaint lacks basic factual support about Plaintiff's experience on the BCBSMA website. Plaintiff's allegations regarding her ECPA claim assert only vaguely that "the tracking technologies revealed information regarding Plaintiff's status as a BCBS-MA policyholder and her communications with BSBS-MA regarding her policy by revealing the substance of communications on BCBS-MA webpages on the MyBlue patient portal." AC ¶ 164. *Compare* AC ¶¶ 11-12 (providing no details of Plaintiff's visit to BCBSMA's website). Among other factual shortcomings,  Plaintiff does not even allege that she visited the specific webpages of BCBSMA's website that she describes in the Amended Complaint; rather, she vaguely alleges that the webpages she visited "were among the webpages on which BCBS-MA embedded code for various tracking technologies" with no further detail but, instead, with a disclaimer that the allegations do not apply to Plaintiff. *Id.* ¶ 12; *see also id.* ¶ 91 n.6 ("This is an example and does not reflect Plaintiff's personal activity on the website.").

### 2. Plaintiff Fails to Allege an Unlawful Interception, Since Defendants Could Not Intercept Their Own Communication.

Plaintiff concedes in the Amended Complaint that the ECPA is a one-party consent statute. AC ¶ 9 ("the ECPA is often described as a one-party consent wiretap statute"); *see also* 18 U.S.C. § 2511(2)(d) (The ECPA does not make it unlawful for someone to "intercept . . . electronic communication where such person is a party to the communication."). A party to a communication therefore cannot "intercept" a communication directed to it and cannot be held liable for

"eavesdropping" upon itself. *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 275 (3d Cir. 2016). Since Plaintiffs plainly alleges that BCBSMA was the intended recipient of all of Plaintiff's alleged communications (*see, e.g*, AC ¶ 4), it is exempt from liability.

Plaintiff attempts to rely on the crime-tort exception to avoid the foreclosing effect of the one-party consent rule on her ECPA claim. *See id.* ¶ 9. That purpose-based exception to the one-party consent rule does not apply here because an alleged interception itself is neither tortious nor unlawful. Such an interpretation would make the exception swallow the rule. Rather, to fall within the exception, the alleged purpose must pertain to tortious or unlawful conduct *other* than the alleged wiretapping itself. *See, e.g.*, *Caro v. Weintraub*, 618 F.3d 94, 98, 100 (2d Cir. 2010); *see also In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 144–45, n.81 (3d Cir. 2015) (citation omitted) (holding that "the defendant must have the intent to use the illicit recording to commit a tort or crime beyond the act of recording itself . . . the criminal or tortious acts contemplated by § 2511(2)(d) are acts secondary to the acquisition of the communication involving tortious or criminal use of the interception's fruits.").

Plaintiff's attempt to ascribe a tortious or unlawful purposes to the conduct at issue is foreclosed by the Amended Complaint's concession that the conduct was carried out for a commercial purpose. *See* AC ¶ 27 (BCBSMA "permits third parties . . . to use the contents of those intercepted communications for . . . commercial purposes, including serving targeted advertisements upon such individuals."); *id.* ¶ 176 ("BCBS-MA's use of the Facebook source code was for BCBS-MA's commercial advantage to increase revenue."). A primarily commercial purpose defeats Plaintiff's attempts to plead the crime-tort exception. *See, e.g.*, *Katz-Lacabe v. Oracle Am.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) ("Defendant's 'purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money.'").

Plaintiff's attempts to summarily allege that BCBSMA intended to violate the Health Insurance Portability and Accountability Act and the Federal Trade Commission Act, as well as the other (albeit nonviable) tort claims Plaintiff brings against BCBSMA, do not suffice to enable a ECPA claim. AC ¶¶ 9, 115-148, 169. *See Okash v. Essentia Health*, No. CV 23-482, 2024 WL 1285779, at \*4 (D. Minn. Mar. 26, 2024) (holding that "because neither the alleged HIPAA nor privacy violations were independent of the interception, the crime-tort exception does not apply"). Beyond foreclosure by the legal standard, the HHS guidance Plaintiff relies upon has been vacated in relevant respects by the Northern District of Texas. *Am. Hops. Ass'n v. Becerra*, 738 F. Supp. 3d 780, 802 (N.D. Tex. June 20, 2024) (vacating the HHS guidance because visiting a health care webpage "does not and cannot identify an individual or the individual's [protected health information]"); *see also* AC ¶ 125 n.11. Equally infirm as a matter of ECPA and underlying law is Plaintiff's reference to the FTC as the allegations do not allege any violation of any specific provision of the FTC Act but rather simply references unrelated FTC settlements. *Id.* ¶¶ 140-144. The exception simply does not apply to conduct allegedly undertaken for commercial gain.

### 3. Plaintiff Fails to Allege Any Plausible Interception of "Contents."

Plaintiff also failed to plead facts showing that the "contents" of any communications were disclosed to third parties—another of required element to state an ECPA claim. Under the ECPA, the "contents" of a communication are defined as "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). Courts assessing ECPA claims distinguish between substantive "content" of a communication and mere "record" information. *See In re Google Cookie Placement*, 806 F.3d at 135-39 (addressing the distinctions between content and routing/record information); *see also In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106-07 (9th Cir. 2014) (in the ECPA "the term 'contents' refers to the intended message conveyed by the

communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication" such as a name, address, or the identity of a subscriber or customer)*; Smart v. Main Line Health*, No. 22-5239, 2024 WL 2943760, at *3 (E.D. Pa. June 10, 2024) (dismissing ECPA claim because "Plaintiff fails to state what specific [HIPAA]-protected information Plaintiff **himself** provided to Defendant via his browsing activity that was subsequently disclosed to Meta." (emphasis in original)).

Plaintiff has not alleged what "contents" were purportedly collected on BCBSMA's portal. A most, Plaintiff alleges she sought "information about her health insurance benefits" with no further specificity. AC ¶ 11; *see also id.* ¶ 83 ("Plaintiff does not describe in this complaint the specific pages she visited."). Without an allegation concerning the actual contents (to wit, personal health information) that was allegedly shared, Plaintiff's claims must be dismissed for failure to plausibly allege an essential element of an ECPA claim. *See, e.g.*, *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 70 (W.D. Pa. 2023).

### 4.    Plaintiff Fails to Allege Use of a "Device."

Plaintiff has also failed to allege use of a device for interception purposes—another essential element of an ECPA claim.  Numerous courts have found that software code, which Plaintiff alleges was used here, does not constitute a device under the ECPA or analog state wiretapping statutes.  *See, e.g.*, *Potter v. Havlicek*, No. 06-CV-211, 2008 WL 2556723, at *8 (S.D. Ohio June 23, 2008) (dismissing federal wiretap claim because "the word 'device' does not encompass software"); *Jacome v. Spirit Airlines Inc.*, No. 2021-000947-CA-01, 2021 WL 3087860, at *5 (Fla. Cir. Ct. June 17, 2021) (dismissing Florida wiretapping claim because software is not a "device").

In sum, on both factual and legal grounds, the Amended Complaint fails to state an ECPA

8

claim, compelling dismissal of Count I.

### B.    Plaintiff Fails to Allege a Chapter 93A Claim (Count II).

Plaintiff claims that BCBSMA violated Chapter 93A by sharing certain unspecified "Private Information" with third parties without her consent. AC ¶¶ 183-185.  To state a claim under Chapter 93A § 9, Plaintiff must plausibly allege: (1) "the defendant has committed an unfair or deceptive act or practice;" (2) "the unfair or deceptive act or practice occurred 'in the conduct of any trade or commerce;'" (3) "plaintiff suffered an injury;" and (4) "the defendant's unfair or deceptive conduct was a cause of the injury." *Rafferty v. Merck & Co., Inc.*, 92 N.E.3d 1205, 1222 (Mass. 2018).  Chapter 93A requires plaintiffs submit "a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered." M.G.L. c. 93A, § 9(3).  Where, as here, a plaintiff's Chapter 93A claim is premised on alleged misrepresentations by the defendant, *see* AC ¶¶ 184-87, the particularity requirements of Federal Rule of Civil Procedure 9(b) apply, requiring Plaintiff to "specifically plead the time, place, and content" of the misconduct alleged. *Mulder v. Kohl's Dep't Stores, Inc.*, 865 F.3d 17, 21-22 (1st Cir. 2017) (citations omitted).

The Amended Complaint fails to allege a cause of action under Chapter 93A, and fails to meet 9(b) standards.  In addition, the Chapter 93A demand letter, a predicate to a claim, is deficient.

### 1.    BCBSMA Is Not Engaged In Trade or Commerce.

As a threshold matter, to state a viable claim under Chapter 93A, a plaintiff must plead that the defendant is engaged in "trade or commerce." *See* M.G.L. c. 93A, §2(a); *Linkage Corp. v. Trustees of Boston Univ.*, 679 N.E.2d 191, 206-07 (Mass. 1997). "A nonprofit or charitable corporation . . . is not engaged in trade or commerce 'if, in the transaction in question, the nonprofit is merely engaged in the customary business necessary to meet its charitable purpose.'" *Trustees of Boston Univ. v. AMS Comm'ns, Inc.*, 33 F. Supp. 2d 66, 77 (D. Mass. 1998); *see also All Seasons*

*Servs., Inc. v. Comm'r of Health and Hosps. of Bos.*, 620 N.E.2d 778, 779-80 (Mass. 1993) (finding conduct that "is merely incidental to the hospital's primary function of providing medical services" was not trade or commerce for purposes of Chapter 93A). As a matter of law, BCBSMA is a charitable corporation pursuant to its enabling legislation. *See* M.G.L. c. 176A, § 19 ("charitable and benevolent organization"); M.G.L. c. 176B, § 14 ("charitable corporation"); Acts, 1988, Ch. 160 (merger legislation subjecting BCBSMA to c. 176A & c. 176B, as well as provisions of 180).

Plaintiff cites a single case to support her conclusory allegation that BCBSMA "is deemed to act in trade or commerce" for purposes of Chapter 93A. *See* AC ¶ 181 (citing *Blue Cross & Blue Shield of Mass, Inc. v. Flexible Fundamentals, Inc.*, 2023 Mass. Super. LEXIS 40, at *3-6 (Mass. Super. Ct. May 3, 2023)). Plaintiff's reliance on this case is misguided for two reasons. ***First***, as the court acknowledged in *Flexible*, numerous courts, including in this District, have found that BCBSMA is *not* engaged in trade or commerce, and thus cannot be liable under Chapter 93A. *See In re Amitiza Antitrust Litig.*, No. 21-CV-11057-MJJ, 2024 WL 4250224, at *17 (D. Mass. Aug. 21, 2024) (under Chapter 93A, "the record showed that [BCBSMA] was a non-profit organization acting pursuant to its legislative mandate."), *report and recommendation adopted as modified*, No. 21-CV-11057-MJJ, 2024 WL 4344887 (D. Mass. Sept. 30, 2024); *In re Pharm. Average Wholesale Price Litig.*, 491 F. Supp. 2d 20, 81-82 (D. Mass. 2007), *aff'd on other grounds*, 582 F.3d 156 (1st Cir. 2009); *In re Lorazepam & Clorazepate Antitrust Litig.*, 295 F. Supp. 2d 30, 45 (D.D.C. 2003); Ex. 2, Order on BCBSMA's Motion to Dismiss, *Wightman v. Blue Cross Blue Shield of Mass.*, No. 2183CV0113A (Mass. Super. Ct. Sept. 20, 2021). ***Second***, the underlying conduct in *Flexible* relates to a services agreement between BCBSMA and Flexible Fundamentals to provide behavioral services to BCBSMA's members. *Flexible*, 2023 Mass. Super. LEXIS 40, at *1. There, BCBSMA was acting in a commercial role; this case, in contrast,

10

concerns BCBSMA acting pursuant to its legislative mandate—"operat[ing] a non-profit medical service plan that pays the cost of medical and other health services provided to its subscribers and covered dependents." *Wightman v. Blue Cross Blue Shield of Mass.*, No. 2183CV0113A, Slip Op. at 10 (Mass. Super. Ct. Sept. 20, 2021). Thus, the conduct alleged is outside the scope of Ch. 93A.

### 2.  Plaintiff Has Not Alleged Any Unfair or Deceptive Conduct or Any Actual Loss or Injury.

Even assuming that BCBSMA was engaged in trade or commerce, the Amended Complaint has no allegations—much less particularized allegations—that BCBSMA made any deceptive affirmative representations to Plaintiff in its privacy policy or otherwise. *See infra* Section II.B (setting out that, at all relevant times, BCBSMA's Privacy Policy disclosed that BCBSMA collects and may share data regarding user interactions with the BCBSMA website). Beyond the fact that the Privacy Policy forecloses the 93A count, the Amended Complaint also consistently fails to meet Rule 9(b)'s heightened pleading requirement when failing to describe with specificity: (a) what she did on BCBSMA's website; (b) where on the website she did it; (c) when she specifically did it; (d) what particular information any third party purportedly received from her or where they received it; (e) what she observed on BCBSMA's website to make it plausible that tracking technologies were in use during her alleged visits; and (f) whether and to what extent BCBSMA made a misrepresentation *or* that Plaintiff relied on BCBSMA's alleged misrepresentations when choosing to visit BCBSMA's website. Instead, the Amended Complaint makes only general and conclusory allegations without identifying (much less with particularity) any unfair or deceptive conduct—let alone actual loss or injury—due to Plaintiff's use of the BCBSMA website.

The Amended Complaint has no allegation that Plaintiff is a Facebook, Google, Twitter, LinkedIn or other social media platform user such that those companies would could associate her interactions with BCBSMA to her "real world identity." Without such allegations, Plaintiff's

claim that BCBSMA shared her information with these third parties so that they could "link intercepted communications back to individuals' real-world identities" is an unsupportable conclusion. AC ¶ 184. If Plaintiff did so allege, Plaintiff would have also consented to those companies' tracking of her web activities, including those captured on third-party websites through Google Analytics, Meta Pixel, Twitter Pixel, and LinkedIn Insight foreclosing her claim on alternative grounds. *See Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) (affirming that "Plaintiffs consented to Facebook's data tracking and collection practices" through acceptance of Facebook's terms and policies); *see also* Meta Privacy Policy, https://www.facebook.com/privacy/policy/ (describing use of data gathered through third party sites); Google Privacy & Terms, https://policies.google.com/technologies/partner-sites (same).

For all of these reasons, the Amended Complaint fails to state a Chapter 93A claim.

### 3.    Plaintiff Failed to Serve a Compliant Demand Letter.

In addition to the substantive shortcomings of the Chapter 93A claim, that claim fails on procedural conditions precedent grounds for the failure to serve a compliant demand letter. Chapter 93A requires the service of a "a written demand for relief, identifying the claimant and reasonable describing the unfair or deceptive act or practice relied upon and the injury suffered." M.G.L. c. 93A, § 9(3); *see also, e.g.*, *Fitzhugh v. HSBC Bank USA, Nat'l Assoc.*, No. CV 19-12394-FDS, 2020 WL 7075123, at *6 (D. Mass. Dec. 3, 2020) (citation omitted). (the "letter must list the 'specific deceptive practices' on which plaintiff's potential claim relies."); *McDermet v. DirecTV, LLC*, No. CV 19-11322-FDS, 2021 WL 217336, at *16. ("[I]t is not enough for a Chapter 93A letter simply to allege such violations; it must 'reasonably describ[e]' the 'injury suffered.'")

Here, Plaintiff's letter—much like the Amended Complaint—made generic allegations regarding her use of BCBSMA's website and her alleged injuries and ignored the specific language

of BCBSMA's privacy disclosures.  *See* Ex. 3, Plaintiff's Ch. 93A Demand Letter at 1-2 (dated Dec. 20, 2024); *see also* Ex. 4, BCBSMA's Response Letter to Plaintiff's Ch. 93A Demand Letter (dated Jan. 17, 2025). Plaintiff's failure to specifically describe the practices complained of failed to meet the basic predicate for stating a claim under Chapter 93A, also compelling dismissal of the Chapter 93A claim. *See Da Silva v. U.S. Bank, N.A.*, 885 F. Supp. 2d 500, 506 (D. Mass. 2012) ("Without a demand letter stating the specific alleged violations, [p]laintiff cannot proceed with a claim of violation of" Ch. 93A).

### C.    Plaintiff Fails to Allege a Massachusetts Privacy Act Claim (Count III).

The Massachusetts Right to Privacy Act (the "Privacy Act") confers a right "against unreasonable, substantial or serious interference with [one's] privacy."  M.G.L. c. 214, § 1B. To succeed on an invasion of privacy claim, Plaintiff must allege "not only that [BCBSMA] unreasonably, substantially and seriously interfered with his privacy by disclosing facts of highly personal or intimate nature, but also that it had no legitimate reason for doing so." *Carmack v. Nat'l R.R. Passenger Corp.*, 486 F. Supp. 2d 58, 80 (D. Mass. 2007).

Plaintiff has not alleged that "facts of highly personal or intimate nature" were disclosed, let alone that such a disclosure resulted in an "unreasonable, substantial or serious interference with his privacy." *Id.* Plaintiff alleges that she visited "webpages . . . on the BCBS-MA Website," AC ¶ 12, but does not identify the specific pages or any communications that were disclosed. Plaintiff herself acknowledges that the Amended Complaint does not specify the pages she visited. *See* AC ¶ 83 ("Plaintiff does not describe in this complaint the specific pages she visited.").

Likewise, Plaintiff claims that BCBSMA's alleged disclosure of unspecified "Private Information" "has subjected [Plaintiff] to unnecessary attention, stigma, and other harms," *id.* ¶ 199, but the Amended Complaint lacks facts to describe any purported attention, stigma or other harms. Because Plaintiff does not specify her purportedly personal or intimate information that

13

was disclosed, or any facts to show that such disclosure resulted in an unreasonable and substantial or serious interference with privacy, Plaintiff fails to state a Privacy Act claim. *See Koppel v. Moses*, No. CV 20-11479-LTS, 2020 WL 6292871, at *8-9 (D. Mass. Oct. 27, 2020) (dismissing invasion of privacy claim where plaintiff had "not alleged the disclosure of any private facts").

### D.     Plaintiff Fails to Allege Breach of Fiduciary Duty (Count IV).

To state a viable claim for breach of fiduciary duty, Plaintiff must show: (1) the existence of a fiduciary duty based upon the relationship of the parties; (2) breach of the fiduciary duty; (3) damages; and (4) a causal connection between the breach of fiduciary duty and damages. *Cape Cod ASC, LLC v. Bentivegna*, No. 2008457, 2010 WL 3038824, at *3 (Mass. Super. Ct. July 1, 2010).  In Massachusetts, "relationships between an insurance company and an insured are not typically understood to be fiduciary in nature." *Thrivent Fin. For Lutherans v. Strojny*, 882 F. Supp. 2d 260, 267 (D. Mass. 2012); *see also Syzmanski v. Boston Mut. Life Ins. Co.*, 778 N.E.2d 16, 27 (Mass. App. Ct. 2002) ("The relationship of insurer and policy holder does not entail a fiduciary duty absent special circumstances of assertion, representation and reliance.") (internal quotes omitted).

The context of Plaintiff's relationship with BCBSMA is not fiduciary, despite her conclusory allegations that "[a] fiduciary relationship existed between [BCBSMA] and Plaintiff" and "Plaintiff reposed its trust and confidence in [BCBSMA]." AC ¶ 204. There is no basis for this conclusory allegation in law or fact. *See Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 414 (S.D.N.Y. 2010) (finding no fiduciary relationship between website user and website owner through mere use of the website). For reasons set out herein, Plaintiff's claim for breach of fiduciary duty should be dismissed.

### E.     Plaintiff Fails to Allege Negligence (Count V).

To state a viable negligence claim, Plaintiff must allege facts establishing "(1) a legal duty

owed to [her] by [D]efendants; (2) a breach of that duty; (3) causation; and (4) an actual loss." *Santos v. U.S. Bank Natl'l Ass'n*, 54 N.E.3d 548, 558 (Mass. App. Ct. 2016). Plaintiff's negligence claim fails for several reasons.

### 1. Plaintiff's Claims Are Barred by the Economic Loss Doctrine.

"[T]he economic loss doctrine bars recovery unless the plaintiffs can establish that the injuries they suffered due to the defendants' negligence involved physical harm or property damage, not solely economic loss." *Cumis Ins. Soc., Inc. v. BJ's Wholesale Club, Inc.*, 918 N.E.2d 36, 46 (Mass. 2009). While Massachusetts has "declined to apply the economic loss doctrine to tort claims against a fiduciary," *In re Shields Health Care Grp., Inc. Data Breach Litig.*, 721 F. Supp. 3d 152, 161 (D. Mass. 2024), "relationships between an insurance company and an insured are not typically understood to be fiduciary," *Strojny*, 882 F. Supp. 2d at 267. Courts regularly dismiss negligence claims as barred by the economic loss doctrine. *See, e.g.*, *In re TJX Cos. Retail Sec. Breach Litig.*, 564 F.3d 489, 498 (1st Cir. 2009); *Zoll Med. Corp. v. Barracuda Networks, Inc.*, 565 F. Supp. 3d 101, 106-07 (D. Mass. 2021); *Cumis Ins.*, 918 N.E.2d at 46. Because Plaintiff has failed to show that she suffered any personal injury or property damage,[4] nor has she alleged a basis for a fiduciary relationship with BCBSMA, Plaintiff's negligence claim is barred by the economic loss doctrine.

### 2. Plaintiff Fails to Plead Facts Giving Rise to a Duty Owed by BCBSMA.

Plaintiff alleges that by "accepting, storing, and controlling the Private Information of

---

[4] Plaintiff's conclusory allegation that BCBSMA's "actions violated the property rights Plaintiff and Class members have in their Private Information," without more, is insufficient to show that Plaintiff has suffered any personal injury or property damage. AC ¶ 149(h).

Plaintiff . . . [BCBSMA] owed a duty to Plaintiff . . . to exercise reasonable care to secure, safeguard, and protect [her] highly sensitive Private Information," AC ¶ 211, and BCBSMA had a duty under Massachusetts and HIPAA privacy laws to protect her data. *See* AC ¶ 214.

First, even though Plaintiff does not specify the types of "Private Information" that were allegedly collected, a number of courts have found data related to a user's healthcare-related browsing history does not reveal medical information protected under HIPAA. *See, e.g.*, *Williams v. TMC Health*, No. CV-23-00434, 2024 WL 4364150, at *4, 7 (D. Ariz. Sept. 30, 2024) (finding health care provider did not owe a duty to protect website visitors' browsing history from being shared, holding that it "would stretch HIPAA and federal guidance implementing HIPAA to an extent completely divorced from the text").

Second, "the mere existence of a statute or regulation does not automatically give rise to a legal duty for purpose of a negligence action." *Roe No. 1 v. Children's Hosp. Med. Ctr.*, 16 N.E.3d 1044, 1052 (Mass. 2014) (citation omitted). "A duty of care must already exist before a plaintiff can use a defendant's statutory violation to support a claim of tort liability." *Juliano v. Simpson*, 962 N.E.2d 175, 179-80 (Mass. 2012). Plaintiff cannot impose a nonexistent duty onto BCBSMA through alleged violations of HIPAA and Massachusetts privacy laws when, standing alone, those laws neither give rise to a duty *per se* nor form the basis of a common law negligence claim.[5]

### 3.    Plaintiff Fails to Allege Causation.

Plaintiff fails to allege BCBSMA was the cause of the "unwanted targeted advertisements" that Plaintiff allegedly received. Plaintiff alleges that *third parties* sold Plaintiff's Private

---

[5] Plaintiff herself acknowledges that HIPAA does not provide a private right of action, AC ¶ 139. In addition, the Massachusetts privacy law Plaintiff cites is governs healthcare facilities – not insurers like BCBSMA. *See* M.G.L. c. 111 § 70E.

Information "to marketers who target Plaintiff . . . with online advertisements based on communications obtained" through BCBSMA's Website.  AC ¶ 3. However, Plaintiff fails to allege that "unwanted targeted advertisements" were shown to Plaintiff, or how her unspecified searches were remotely connected to—let alone the cause of—such unwanted targeted advertisements. Plaintiff's speculative and attenuated allegations do not establish causation. *See, e.g.*, *Borden v. Betty Gibson Assoc., Inc.*, 574 N.E.2d 1020, 1022 (Mass. App. Ct. 1991) ("A recovery in a negligence case cannot be based on conjecture or speculation as to causation.").

### 4.    Plaintiff Fails to Allege She Suffered Actual Harm.

Plaintiff fails to plead facts to show actual harm caused by BCBSMA's alleged conduct. Rather, the Amended Complaint summarizes ambiguously framed injuries without any factual reference or allegations in support. *See* AC ¶ 149. Plaintiff is required to plead *actual* damages as a necessary element of negligence—a task she has failed to do. Plaintiff's generic recitation of damages is insufficient to establish damages under her negligence claim. *See Portier v. NEO Tech. Sols.*, No. 3:17-CV-30111-TSH, 2019 WL 7946103, at *15 (D. Mass. Dec. 31, 2019), *report and recommendation adopted*, 2020 WL 877035 (D. Mass. Jan. 30, 2020).  Further, other courts have held that plaintiffs have no actionable damages arising from alleged use of tracking software on healthcare websites. *See, e.g.*, *Steinberg v. CVS Caremark Corp.*, 899 F. Supp. 2d 331, 339-40 (E.D. Pa. 2012) ("Other district courts examining the issue have found that the collection and sale of this kind of information does not carry a compensable value to consumers, and cannot sustain a finding of injury without a specific showing that the plaintiff has sustained a resulting loss.").

### F.    Plaintiff's Breach of Confidence Claim Fails (Count VI).

Plaintiff's cause of action for "breach of confidence" fails because no such cause of action exists under Massachusetts law. *Cf. Spencer v. Roche*, 755 F. Supp. 2d 250, 271 (D. Mass. 2010), *aff'd*, 659 F.3d 142 (1st Cir. 2011) ("Massachusetts has never recognized a common-law cause of

action for invasion of privacy. To the extent, therefore, that plaintiff's cause of action for invasion of privacy is based on state common law, it likewise fails as a matter of law."). Therefore, the Court should dismiss Plaintiff's breach of confidence claim.

### G.    Plaintiff Fails to Allege Facts to Support a Breach of Contract Claim (Count VII).

"In Massachusetts, a valid contract requires offer, acceptance and consideration." *Weekes v. Cohen Cleary P.C.*, 723 F. Supp. 3d 97, 103-04 (D. Mass. 2024). Express and implied contracts require the same elements "except that the manifestation of mutual assent may be found to exist from the conduct and relationship of the parties." *Id.* (citing *Durbeck v. Suffolk Univ.*, 547 F. Supp. 3d 133 at 144-45 (D. Mass. 2021)). "[T]he elements of a breach of contract claim are that there was an agreement . . . ; the agreement was supported by consideration; the plaintiff was ready, willing, and able to perform his or her part of the contract; the defendant committed a breach . . . ; and the plaintiff suffered harm as a result." *Durbeck*, 547 F. Supp. 3d at 144-45.

Here, Plaintiff alleges BCBSMA required her to "provide [her] Private Information . . . as a condition of receiving healthcare insurance services" and "[i]n so doing, Plaintiff . . . entered into contracts with [BCBSMA] (or, in the alternative, implied contracts) . . . to safeguard and protect such information . . . [and] to keep such information secure and confidential." AC ¶¶ 231-32. However, Plaintiff has not alleged with specificity the type of "Private Information" allegedly collected from Plaintiff, let alone the way in which BCBSMA required her to provide such information. Nor has Plaintiff alleged that the purported collection of such data was a "condition" of any written contract between the parties. Thus, Plaintiff fails to show that a contract existed with respect to the alleged collection of her interactions with BCBSMA's Website.

Plaintiff also fails to show "the necessary element of mutual assent" for the alleged collection of Plaintiff's interactions with BCBSMA's Website. Mutual assent "occurs when there

is an offer by one [party] and an acceptance of it by the other." *Vacca v. Bringham & Women's Hosp., Inc.*, 156 N.E.3d 800, 806 (Mass. App. Ct. 2020) (internal cites and quotes omitted). In contrast, courts find lack of mutual assent where parties never "discussed the manner of safeguarding [Private Information] or that plaintiff had a particular concern about disclosing that information." *Weekes*, 723 F. Supp. 3d at 104 (rejecting breach of contract claim based on alleged improper disclosure of private information). Plaintiff does not—and cannot—allege that BCBSMA agreed to protect her interactions with BCBSMA's Website, nor does Plaintiff allege that she had a "particular concern" sharing her interactions with BCBSMA's Website. In sum, Plaintiff failed to allege a valid and enforceable contract much less any breach.

### H. Plaintiff Cannot State a Claim for Unjust Enrichment (Count VIII).

To state a viable claim of unjust enrichment, a plaintiff must establish "(1) [she] conferred a measurable benefit upon the defendant; (2) [she] reasonably expected compensation from the defendant; and (3) the defendant accepted the benefit with the knowledge, actual or chargeable, of the plaintiff's reasonable expectation." *Tedeschi-Freij v. Percy Law Grp.,* 172 N.E.3d 774, 782 (Mass. App. Ct. 2021). Plaintiff's unjust enrichment claim fails for two primary reasons: (1) Plaintiff fails to allege that she knowingly conferred a benefit on BCBSMA; and (2) Plaintiff fails to allege that she "reasonably expected compensation" from BCBSMA.

First, Plaintiff alleges that "[*h*]*ad* [BCBSMA] informed Plaintiff that it collected and shared Plaintiff's [PII] . . . Plaintiff would have refused to consent" and "[*n*]*ow* knowing of [BCBSMA's] practices, Plaintiff demands compensation." AC ¶ 244 (emphasis added). By Plaintiff's own admission, she provided this alleged benefit unknowingly, and thus could not have reasonably expected compensation. *See ARK Nat'l Holdings LLC v. We Campaign LLC*, No. CV 21-10893-RGS, 2021 WL 5918682, at *5 n.2 (D. Mass. Dec. 15, 2021).

Second, Plaintiff does not allege that she expected to receive payment from BCBSMA

when using the website—nor could there be any reasonable expectation of payment, as Plaintiff separately paid BCBSMA for insurance and any expectation that browsing BCBSMA's website would result in compensation would not be reasonable. *Compare* AC ¶ 11 ("Plaintiff obtains health insurance from [BCBSMA].""), *with* AC ¶ 244 ("[n]ow knowing of [BCBSMA's] practices, Plaintiff demands compensation."). Plaintiff's failure to plead allegations showing that she knowingly conferred a benefit on BCBSMA, coupled with her failure to plead allegations showing that she reasonably expected compensation at the time the benefit was conferred, is fatal to her unjust enrichment claim. *See Tyler v. Michaels Stores, Inc.*, 840 F. Supp. 2d 438, 451 (D. Mass. 2012) (dismissing unjust enrichment claim because plaintiff did not allege that a reasonable person would expect payment for PII); *ARK Nat'l Holdings*, 2021 WL 5918682, at *5 n.2 (same).

V.    **CONCLUSION**

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Respectfully submitted,

Dated: March 21, 2025

*/s/  Wayne E. George*
Daniel S. Savrin, Bar No. 555434
Wayne E. George, Bar No. 656286
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA 02110-1726
Telephone:    +1.617.341.770
Facsimile:    +1.617.341.7701
daniel.savrin@morganlewis.com
wayne.george@morganlewis.com

Ezra D. Church (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA  19103
Telephone:    +1.215.963.5000
Facsimile:    +1.215.963.5001
ezra.church@morganlewis.com

*Attorneys for Blue Cross and Blue Shield of Massachusetts, Inc. and Blue Cross and Blue*

*Shield of Massachusetts HMO Blue, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 21, 2025, I served a copy of the foregoing document via email and electronically filed the above document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Wayne E. George*
Wayne E. George