**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

**Suffolk, ss.**

| | |
|---|---|
| KATHLEEN VITA,<br><br>For herself and the Class,<br><br>v.<br><br>BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS, INC. AND BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS HMO BLUE, INC.,<br><br>Defendant. | **Case No. 1:25-cv-10420-LTS** |

# PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

SHAPIRO HABER & URMY LLP
Edward F. Haber (BBO #215620)
Michelle H. Blauner (BBO #549049)
Patrick J. Vallely (BBO #663866)
One Boston Place
Suite 2600
Boston, MA 02108
(617) 439-3939 – Telephone
(617) 439-0134 – Facsimile
ehaber@shulaw.com
mblauner@shulaw.com
pvallely@shulaw.com

***Counsel for Plaintiff***

# Table of Contents


I. Introduction ..... 1

II. The Facts. ..... 2

A. BCBSMA Implemented Tracking Technologies in a Manner that Disclosed Patient Status, the Substance of Patient Communications, and Patient Identities. ..... 2

B. BCBSMA's Only Disclosures Regarding Tracking Technologies Were Deceptive. ..... 3

C. Plaintiff's Communications Intercepted on the BSBSMA Website. ..... 4

III. Argument ..... 5

A. Plaintiff States a Claim for Violation of the ECPA. ..... 5

1. Plaintiff Adequately Alleges the Crime-Tort Exception to One-Party Consent. ..... 5

a. Plaintiff Adequately Alleges Her Own Experience. ..... 5

b. Plaintiff Adequately Alleges the Crime-Tort Exception. ..... 6

c. Plaintiff Alleges Crimes and Torts Independent of the ECPA Violation. ..... 8

d. BCBSMA's Commercial Motives Do Not Negate Its Tortious Purpose. ..... 9

2. Plaintiff Alleges the Interception of the Contents of Her Communications. ..... 10

3. Plaintiff Alleges the Use of an Intercepting Device. ..... 11

B. Plaintiff States a Claim Under Chapter 93A. ..... 11

1. BCBSMA Operates in Trade or Commerce ..... 11

2. Plaintiff Alleged Unfair and Deceptive Practices ..... 12

3. Plaintiff Served an Adequate Demand Letter ..... 14

C. Plaintiff States a Claim under the MRPA ..... 14

D. Plaintiff States a Claim for Breach of Fiduciary Duty ..... 16

E. Plaintiff States a Claim for Breach of Confidence ..... 17

F. Plaintiff States a Claim for Negligence ........ 17

G. Plaintiff States a Claim for Breach of Contract ........ 19

H. Plaintiff States a Claim for Unjust Enrichment ........ 20

IV. Conclusion ........ 20

## Table of Authorities

Pages

**Cases**

*A.J. v. LMND Med. Grp., Inc.*,
2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024) ........ passim

*Alberts v. Devine*,
395 Mass. 59 (1985) ........ 17

*Alves v. BJ's Wholesale Club, Inc.*,
2023 Mass. Super. LEXIS 59 (Super. Ct. June 21, 2023) ........ 15

*Am. Hosp. Ass'n v. Becerra*,
2024 U.S. Dist. LEXIS 108847 (N.D. Tex. June 20, 2024) ........ 7

*Aspinall v. Philip Morris*,
442 Mass. 381 (2004) ........ 13

*Bennett v. Eagle Brook County Store, Inc.*,
408 Mass. 355 (1990) ........ 18

*Blue Cross Blue Shield of Mass., Inc. v. Flexible Fundamentals, Inc.*,
2023 Mass. Super. LEXIS 40 (Super. Ct. May 3, 2023) ........ 12

*Brahm v. Hosp. Sisters Health Sys.*,
2024 U.S. Dist. LEXIS 114827 (W.D. Wis. June 28, 2024) ........ 5, 16, 17

*Bratt v. Int'l Bus. Machines Corp.*,
392 Mass. 508 (1984) ........ 16

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........ 15

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010) ........ 9

*Castillo v. Costco Wholesale Corp.*,
2024 U.S. Dist. LEXIS 207197 (W.D. Wash. Nov. 14, 2024) ........ 10, 11

*Commonwealth v. McCarthy*,
484 Mass. 493 (2020) ........ 6

*Cooper v. Mt. Sinai Health Sys., Inc.*,
2024 U.S. Dist. LEXIS 134570 (S.D.N.Y. July 30, 2024) ........ 10, 17

*Doe v. Bayhealth Med. Ctr. Inc.*,
2025 Del. Super. LEXIS 154 (Super. Ct. Apr. 2, 2025) .......... 8, 13

*Doe v. Bos. Med. Ctr. Corp.*,
2023 Mass. Super. LEXIS 674 (Super. Ct. Sep. 14, 2023) .......... 6, 15

*Doe v. Emerson Hosp.*,
2023 Mass. Super. LEXIS 673 (Super. Ct. Nov. 22, 2023).......... passim

*Doe v. Medstar Health, Inc.*,
2020 Md. Cir. Ct. LEXIS 139 (Cir. Ct. Aug. 5, 2020) ..........16

*Doe v. Partners Healthcare*,
No. 1984CV01651-BLS1 (Mass. Super. Ct.).......... 15, 16

*Doe v. Post Acute Med., LLC*,
2025 U.S. Dist. LEXIS 26667 (M.D. Pa. Feb. 14, 2025) ..........10

*Doe v. Tenet Healthcare Corp.*,
731 F. Supp. 3d 142 (D. Mass. 2024).......... passim

*Doe v. Va. Mason Med. Ctr.*,
2020 Wash. Super. LEXIS 7567 (Super. Ct. 2020) ..........13

*Elkins v. Bartholomew Cnty. Pub. Hosp.*,
2024 Ind. Super. LEXIS 340 (Super. Ct. Dec. 16, 2024) ..........20

*Gaige v. Exer Holdings Co., LLC*,
2025 U.S. Dist. LEXIS 17146 (C.D. Cal. Jan. 30, 2025) ..........8

*Garcia v. Columbia Med. Ctr.*,
996 F. Supp. 617 (E.D. Tex. 1998)..........18

*Gay v. Garnet Health*,
2024 U.S. Dist. LEXIS 168515 (S.D.N.Y. Sept. 16, 2024) ..........9

*In re BetterHelp, Inc. Data Disclosures Cases*,
2024 U.S. Dist. LEXIS 124321 (N.D. Cal. July 15, 2024) ..........10

*In re Carrier IQ, Inc. Consumer Privacy Litig.*,
78 F. Supp. 3d 1051 (N.D.Cal. 2015)..........11

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ..........15

*In re Google Inc.*,
806 F.3d 125 (3d Cir. 2015).......... 9, 10, 15

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022)........................................7, 10, 15, 19

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024)........................................6, 19

*In re Pharmatrak, Inc. Privacy Litig.*,
329 F.3d 9 (1st Cir. 2003)........................................1

*In re TikTok, Inc. In-App Browser Priv. Litig.*,
2024 U.S. Dist. LEXIS 178597 (N.D. Ill. Oct. 21, 2024)........................................4

*Jacome v. Spirit Airlines*,
2021 Fla. Cir. LEXIS 1435 (Fla. Cir. Ct. June 17, 2021)........................................11

*Jarrell v. Adena Health Sys.*,
2025 U.S. Dist. LEXIS 6169 (S.D. Ohio Jan. 13, 2015)........................................7, 9

*Kane v. Univ. of Rochester*,
2024 U.S. Dist. LEXIS 48515 (W.D.N.Y. Mar. 19, 2024)........................................9

*Kelley v. CVS Pharmacy, Inc.*,
23 Mass. L. Rep. 87 (2007)........................................6

*Klumb v. Goan*,
884 F. Supp. 2d 644 (E.D. Tenn. 2012)........................................11

*Kurowski v. Rush Sys. For Health*,
2024 U.S. Dist. LEXIS 126837 (N.D. Ill. July 18, 2024)........................................5, 8, 9

*Lee v. Conagra Brands, Inc.*,
958 F.3d 70 (1st Cir. 2020)........................................19

*Lugo v. Inova Health Care Servs.*,
2025 U.S. Dist. LEXIS 55590 (E.D. Va. Mar. 25, 2025)........................................10

*Luis v. Zang*,
833 F.3d 619 (6th Cir. 2016)........................................11

*M.G. v. Therapymatch*,
2024 U.S. Dist. LEXIS 166534 (N.D. Cal. Sept. 16, 2024)........................................10, 11

*Mayer v. Midwest Physician Admin. Servs., LLC*,
2025 U.S. Dist. LEXIS 60486 (N.D. Ill. Mar. 31, 2015)........................................10

*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024)........................................9

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
2024 U.S. Dist. LEXIS 177625 (E.D. Pa. Sep. 30, 2024) ....................9

*O'Hara v. Diageo-Guinness USA, Inc.*,
306 F. Supp. 3d 441 (D. Mass. 2018)....................14

*Patsos v. First Albany Corp.*,
433 Mass. 323 (2001)....................16

*Peckham v. Bos. Herald, Inc.*,
48 Mass. App. Ct 282 (App. Ct. 1999)....................6

*Polay v. McMahon*,
468 Mass. 379 (2014).................... 14, 15

*Portier v. NEO Tech. Sols.*,
2019 U.S. Dist. LEXIS 227494 (D. Mass. Dec. 31, 2019) ....................18

*Potter v. Havlicek*,
2008 U.S. Dist. LEXIS 122211 (S.D. Ohio June 23, 2008)....................11

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ....................7, 11, 16

*Roe No. 1 v. Children's Hosp. Med. Ctr.*,
469 Mass. 710 (2014)....................18

*Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
409 Mass. 514 (1991)....................14

*Shedd v. Sturdy Mem. Hosp.*,
2022 Mass. Super. LEXIS 7 (Super. Ct. Apr. 5, 2022) .................... 17, 18

*Smith v. Facebook Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017)....................13

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ....................13

*Stein v. Edward-Elmhurst Health*,
2025 U.S. Dist. LEXIS 31273 (N.D. Ill. Feb. 21, 2025) ....................9

*Transamerica Ins. Co. v. KMS Patriots*,
52 Mass. App. Ct. 189 (App. Ct. 2001)....................6

*United States v. Hutchins*,
2018 U.S. Dist. LEXIS 183898 (E.D. Wis. 2018) ....................11

*Vita v. New England Baptist Hosp.*,
494 Mass. 824 (2024) .......... passim

*Warsofsky v. Sherman*,
326 Mass. 290 (1950) .......... 16

*Wheatley v. Mass. Insurers Insolvency Fund*,
456 Mass. 594 (2010) .......... 12

*Wheatley v. Mass. Insurers Insolvency Fund*,
465 Mass. 297 (2013) .......... 12

*Williams v. TMC Health*,
2024 U.S. Dist. LEXIS 178452 (D. Ariz. Sept. 30, 2024) .......... 18

*Wilson Farm. v. Berkshire Life Ins. Co.*,
2002 Mass. Super. LEXIS 376 (Super. Ct. Oct. 31, 2002) .......... 16

*Yoon v. Meta Platforms, Inc.*,
2024 U.S. Dist. LEXIS 234457 (N.D. Cal. Dec. 30, 2024) .......... 11

**Statutes**

Fla. Stat. § 934.02 .......... 11

M.G.L. c. 214 § 1B .......... 14

M.G.L. c. 93A § 2 .......... 14

## I. INTRODUCTION

Defendants Blue Cross and Blue Shield of Massachusetts, Inc. and Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc. ("BCBSMA") injected hidden code on their website that permitted third parties—including Google and Facebook—to secretly eavesdrop on Plaintiff Kathleen Vita's ("Plaintiff") communications with BCBSMA. BCBSMA did not disclose to consumers that it enabled such third parties to intercept and associate their communications with consumers' real-world identities or that Google and Facebook could then use the intercepted information for their own commercial purposes. Plaintiff's claims align with First Circuit precedent established twenty years ago, affirming federal wiretap claims for the surreptitious use of tracking technologies on medical websites. *In re Pharmatrak, Inc. Privacy Litig.*, 329 F.3d 9, 13-16 (1st Cir. 2003). BCBSMA's arguments for dismissal each lack merit.

First, Plaintiff asserts a federal Electronic Communications Privacy Act ("ECPA") claim. The one-party consent defense for the ECPA does not apply because Plaintiff alleges both a criminal and tortious purpose by alleging BCBSMA's intentional decision to inject hidden code onto its website, resulting in unauthorized disclosures of intercepted communications, in violation of both federal criminal and state tort law. BCBSMA's conduct is extraordinary for its deployment of tracking technologies throughout its patient portal, distinguishing this case from and making it more egregious than many ECPA cases where the use of tracking technologies was alleged to occur only on public-facing pages of the website. Plaintiff also adequately alleges that the contents of her communications were intercepted by BCBSMA's deployment of tracking technologies on the MyBlue Patient Portal and its use of descriptive URLs that, when intercepted, revealed the substance of the intercepted communications.

Plaintiff also adequately alleges each Massachusetts claim she asserts. BCBSMA's challenges to particular elements of those claims lack merit, as do its challenges to the sufficiency of Plaintiff's allegations regarding her own communications. Plaintiff alleges more than sufficient detail to support her claims that BCBSMA violated the law by secretly injecting eavesdropping code on its website.

For the reasons detailed below, the Court should deny the motion to dismiss.

## II. THE FACTS.

### A. *BCBSMA Implemented Tracking Technologies in a Manner that Disclosed Patient Status, the Substance of Patient Communications, and Patient Identities.*

BCBSMA injected hidden code in its website that enabled third parties, including Google and Facebook, to eavesdrop on communications between BCBSMA and policyholders, including Plaintiff. ¶¶ 34–66, 111.[1] The code caused consumers' browsers to intercept the substance of the communication made through the website and to disclose the intercepted communications to third parties. *See* ¶¶ 59-64, 67–110. After it was sued, BCBSMA removed the tracking technologies from its website. ¶ 66.

Distinguishing this case from others involving healthcare companies that only used tracking technologies on public pages of their websites, BCBSMA deployed tracking technologies throughout its BCBSMA "MyBlue" portal, including pages that policyholders could access only after logging in to obtain information about their health insurance. ¶¶ 97-110. By deploying the tracking technologies within the MyBlue portal, BCBSMA revealed to Google, Facebook, and other third parties each request consumers made within the portal for information about their insurance (¶ 107), including reviewing the status of insurance claims (¶¶ 108-09) and information about their medications (¶ 110).

The tracking technologies intercepted all webpage URLs accessed. URLs serve as addresses for webpages but can also reveal the substance of the communication if "descriptive URLs" are used. ¶ 56. BCBSMA used descriptive URLs. For example, URLs for medical conditions, when intercepted, revealed the substance of the information communicated. *See, e.g.*, *id.* (https://www.**bluecrossma**.org/myblue/-your-health-and-wellness/**pregnancy**) (emphasis added); ¶¶ 81, 84-89, 91-94. The tracking technologies also disclosed the title of each page visited, which further described the substance of the information communicated through the page (such as "Pregnancy – Benefits for Expecting Parents"). *E.g.,* ¶ 85.

The interceptions were designed to enable Google and Facebook to associate the intercepted communications with individuals known to those third parties to facilitate individualized, targeted

[1] "¶ __" refers to paragraphs of Plaintiff's Amended Complaint. Plaintiff filed the Amended Complaint in the Massachusetts Superior Court prior to removal of this case. Because the state-court e-filing system distorts color and graphics in the Amended Complaint, Plaintiff attaches as **Exhibit 1** to this motion a high-quality, color version of her Amended Complaint.

advertising to those individuals. The information Google and Facebook used to identify individuals included IP addresses, ¶¶ 36, 55, 76, 81, 88, 89, 101; browser fingerprints (unique combinations of browser and computer settings that confirm the identity of an individual), ¶¶ 74, 77-78; and persistent personal identifiers (numbers) assigned by Google or Facebook used to track a particular individual across the BCBSMA Website and other websites. ¶¶ 36, 75, 81.

B. *BCBSMA's Only Disclosures Regarding Tracking Technologies Were Deceptive.*

By design, tracking technologies are invisible to consumers, implemented through hidden code injected by the website owner (BCBSMA). ¶¶ 3, 50, 58, 63, 67, 69, 87. Although it makes no Rule 12(b)(6) motion based on disclosure or consent, BCBS claims that it "disclosed the challenged activity." MTD 3. This is simply untrue. BCBSMA points to a passage from a website policy that discusses how BCBSMA records website traffic and "sometimes hire[s] other companies to perform services on [its] behalf," which may involve sharing "personal information…to these companies to enable them to perform these services." MTD at 3-4. But, the same disclosure asserts that such companies "are generally not authorized to use [web traffic] information for any other purpose than completing their contractual requirements." MTD at 3-4.[2] That was false, because that is precisely what Google and Facebook do—they use the intercepted communications for their own separate commercial purposes, not just to provide services to BCBSMA. The very next sentence (which BCBSMA cuts off from the block quote in its brief) states: "We don't share, sell, or otherwise distribute your information with entities outside of Blue Cross Blue Shield of Massachusetts who may want to market to you their own products and services." MTD Ex. 1. Again, this was false, as the tracking technologies enable Google, Facebook, and other third parties to use the intercepted communications for marketing purposes (not just for BCBSMA). ¶¶ 27, 32, 38, 46.

In other passages of its policies that BCBSMA omits to mention, it falsely stated that users "may browse our website anonymously" and that any tracking technologies analyze only "anonymous usage" and do not "collect any personal identifiable information from [the] website's visitors." ¶¶ 27-32. These

[2] "MTD" refers to BCBSMA's memorandum in support of its motion to dismiss, Do No. 13.

statements were false because the tracking technologies were designed to associate intercepted communications with users' real-world identities. *Id.*

C. *Plaintiff's Communications Intercepted on the BSBSMA Website.*

Plaintiff is a BCBSMA policyholder. ¶ 11. She regularly used the BCBSMA Website to obtain information regarding her health insurance, including through the MyBlue patient portal. *Id.* Plaintiff expressly alleges BCBSMA deployed tracking technologies throughout the MyBlue patient portal, resulting in third-party interceptions of her communications made through the portal. ¶¶ 12, 96-109. Plaintiff neither knew of nor consented to the interceptions or disclosures. ¶ 13.

BCBSMA harps on a sentence of Plaintiff's complaint (¶¶ 83, 91 n.6) where she presents examples of how tracking technologies operate but notes the examples provided do not capture her actual browsing activity. MTD 2, 5, 8, 13. From there, BCBSMA leaps to the conclusion that Plaintiff alleges nothing about her own "experience," a factual contention upon which several of BCBSMA's legal arguments depend. MTD 1, 4-5, 13, 16-17. BCBSMA's contention is untrue. Plaintiff alleges specifically that she used the MyBlue portal to obtain information about her health insurance, and she describes in detail how the tracking technologies BCBSMA deployed in the portal disclose to third parties each action the policyholder takes in the portal. ¶¶ 96-109. Pages within the portal are dynamically generated and specific to the user; accordingly, the criticism that Plaintiff does not describe the "pages" she visited is nonsensical, as the portal pages are not static pages. Plaintiff does not disclose in the Complaint her medical conditions or health insurance details, but that decision to preserve Plaintiff's privacy does not preclude her from meeting her pleading burden. *See* § III-A-1-a, *infra*.[3] In short, Plaintiff provides more than sufficient detail to put BCBSMA on notice of the claims against it.

---

[3] If BCBSMA means to suggest Plaintiff must record and present in her complaint the precise text intercepted from her communications, similar to the examples she provides, *e.g.,* ¶¶ 105-10, BCBSMA proposes an impossible standard, given that those examples were created using special tools that record network traffic **<u>at the time of website browsing</u>**, ¶ 63. Because Plaintiff was unaware of the interceptions when she visited the BCBSMA website, she had no reason to use special tools to record her network traffic. *In re TikTok, Inc. In-App Browser Priv. Litig.*, 2024 U.S. Dist. LEXIS 178597, at *21 (N.D. Ill. Oct. 1, 2024) (describing "'chicken and the egg' problem that frequently arises in data-privacy cases, in which plaintiffs often lack knowledge of when or how their data is being used by the defendant's platform and can find out only through discovery.").

## III. ARGUMENT

### A. *Plaintiff States a Claim for Violation of the ECPA.*

BCBSMA violated the ECPA by injecting hidden code on its website that enabled third parties, including Google and Facebook, to eavesdrop on healthcare consumers' communications with BCBMA. BCBSMA's three arguments for dismissal each lack merit.

#### 1. Plaintiff Adequately Alleges the Crime-Tort Exception to One-Party Consent.

Although the ECPA provides a defense if **either** party consents to an interception, the ECPA imposes a **two-party** consent requirement (requiring consent of **both** BCBSMA **and** Plaintiff) if a communication "is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any state." 18 U.S.C. § 2511(2)(d). "[T]he phrase 'for the purpose of' does not require that a party act with knowledge that its intended use of the intercepted communication is illegal," that is, a "heightened willfulness requirement"; it simply requires the "*mens rea*…of the underlying torts or crimes." *Kurowski v. Rush Sys. For Health*, 2024 U.S. Dist. LEXIS 126837, at *12-13 (N.D. Ill. July 18, 2024).[4] That means BCBSMA must have "actively chose[n] to employ the tracking technology on certain pages of its website that were likely to contain" information the disclosure of which is plausibly criminal or tortious. *Id.* at *14. Plaintiff meets that requirement—BCBSMA decides what tracking technologies to use and chooses to implement them secretly. ¶¶ 57-60, 64-66.

##### a. Plaintiff Adequately Alleges Her Own Experience.

BCBSMA argues (MTD 4-5) that Plaintiff fails to allege "factual support" for her "experience." It is unclear what BCBSMA contends Plaintiff should have alleged. She expressly alleged that she used the BCBSMA MyBlue patient portal to obtain information about her insurance policy. BCBSMA contends "Plaintiff does not even allege that she visited the specific webpages of BCBSMA's website that she describes in the Amended Complaint," *id.*, but the MyBlue patient portal is such a page she visited

[4] *Brahm v. Hosp. Sisters Health Sys.,* 2024 U.S. Dist. LEXIS 114827, at *13-16 (W.D. Wis. June 28, 2024) (crime-tort exception met where "defendants intercepted patients' electronic communications for the purpose of making disclosures that violated HIPAA"); *R.S. v. Prime Healthcare Servs.*, 2025 U.S. Dist. LEXIS 6338, at *13-14 (C.D. Cal. Jan. 13, 2025) ("intent to disclose" enough); *A.J. v. LMND Med. Grp., Inc.*, 2024 U.S. Dist. LEXIS 194480, at *3-4 (N.D. Cal. Oct. 25, 2024).

on which BCBSMA deployed tracking technologies. ¶¶ 12, 96-109. If BCBSMA means to argue that Plaintiff must publicly disclose her medical conditions or details of her insurance claims, that is wrong. *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1004 (N.D. Cal. 2024) ("Plaintiffs do not need to plead the specific and presumably highly sensitive contents of the communications they say were intercepted in order to plausibly allege that interception occurred"); *Doe v. Emerson Hosp.*, 2023 Mass. Super. LEXIS 673, at *11-12 (Super. Ct. Nov. 22, 2023) (rejecting argument that complaint "reveals little about the information that Plaintiff entered on its website") (citing *Doe v. Bos. Med. Ctr. Corp.*, 2023 Mass. Super. LEXIS 674 (Super. Ct. Sept. 14, 2023)). It simply cannot be the rule that to obtain a remedy for serious privacy violations, a plaintiff must abandon the privacy she seeks to vindicate.

b. Plaintiff Adequately Alleges the Crime-Tort Exception.

BCBSMA argues that Plaintiff fails to allege that the interceptions were made for a criminal or tortious purpose. Plaintiff's allegations that BCBSMA acted with tortious intent based on the Massachusetts statutory and common law torts for which she asserts claims are sufficient. ¶¶ 168-69, 192-209, 218-29.[5] The torts include intrusion upon seclusion and disclosure of private facts (codified by the Massachusetts Right to Privacy Act ("MRPA")),[6] breach of fiduciary duty, and breach of confidence. Although the elements of those torts vary, the tortious purpose is the same—the intentional disclosure of communications in contradiction to BCBSMA's own promises and consumers' reasonable expectations. Every Massachusetts court that has considered those claims in cases relating to surreptitious use of tracking technologies has affirmed such claims. *See* §§ III-B, C, D, *infra*.

---

[5] ¶¶ 168-69 ("The party exception…does not permit a party…to escape liability if the communication is intercepted for the purpose of committing any tortious or criminal act…. BCBS-MA intentionally intercepted the contents of Plaintiff's and Class Members' electronic communications for the purpose of committing a tortious act in violation of the Constitution or laws of the United States or of any State—namely, violation of HIPAA and the FTC Act, **as well as the other causes of action set forth in this complaint**.") (emphasis added); ¶¶ 192-209, 218-29 (Massachusetts statutory and common law tort claims).

[6] The MRPA codifies common law torts and thus provides remedies for the "tort [for] invasion of privacy." *Transamerica Ins. Co. v. KMS Patriots*, 52 Mass. App. Ct. 189, 195-96 (App. Ct. 2001); *Kelley v. CVS Pharmacy, Inc.*, 23 Mass. L. Rep. 87 (2007) (MRPA creates "statutory tort of invasion of privacy"); *Peckham v. Bos. Herald, Inc.*, 48 Mass. App. Ct 282, 283 (App. Ct. 1999) (MRPA creates a "tort claim of public disclosure of private facts"); *Commonwealth v. McCarthy*, 484 Mass. 493, 510 & n.18 (2020) (MRPA "creates a cause of action for tort liability").

Plaintiff's allegations regarding those intentional torts (including the **unchallenged** state of mind allegations for each tort)[7] satisfy the crime-tort exception. *See, e.g., In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) (holding "tort claims may lie against health care providers over their use of the Pixel," and "the crime-tort exception [may] appl[y]" based on such torts); *Jarrell v. Adena Health Sys.*, 2025 U.S. Dist. LEXIS 6169, at *6-13 (S.D. Ohio Jan. 13, 2015) (state law privacy claim satisfies crime-tort exception); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901-02 (C.D. Cal. 2024) (same).

Plaintiff additionally alleges a HIPAA violation that supports the crime-tort exception. BCBSMA's cursory argument on HIPAA (MTD 7) fails to grapple with a core fact—BCBSMA deployed tracking technologies within its MyBlue patient portal. Pretending these allegations don't exist, BCBSMA cites to *Am. Hosp. Ass'n v. Becerra*, 2024 U.S. Dist. LEXIS 108847 (N.D. Tex. June 20, 2024). *Becerra* focused specifically on a December 2022 Department of Health and Human Services Bulletin ("HHS Bulletin"), and vacated only part of the HHS Bulletin relating to a "Proscribed Combination" of an "IP address" and a **public** webpage "addressing specific health conditions or healthcare providers." It held that interception of those two things, **standing alone**, is insufficient for a HIPAA violation. *Id.* at *6-7.

Plaintiff's allegations here do not focus on that "Proscribed Combination." Although the complaint describes how tracking technologies were used on some public-facing pages, Plaintiff also alleges that BCBSMA deployed the tracking technologies within its patient portal, which Plaintiff visited. Those portal pages are **not** public-facing webpages like those at issue in *Becerra.*

Notably, in a landmark decision against Facebook concerning Meta Pixel, the court held that "patient status is protected health information" under HIPAA, and therefore, intercepted webpage communications "which show[] patient-status constitute[] protected health information." *Meta Pixel Healthcare*, 647 F. Supp. 3d at 792-93. The court explained that pages showing "a user is about to log in to a healthcare provider's website" reveal "patient status." *Id.* Plaintiff here alleges more—BCBSMA used

[7] BCBSMA challenges Plaintiff's allegations on certain elements of each Massachusetts claim but not state of mind. *See* MTD 13-14, 17-18. Plaintiff's unchallenged allegations of tortious intent are all that matters under the crime-tort exception: "[T]he focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use—was criminal or tortious." *R.S.*, 2025 U.S. Dist. LEXIS 6338, at *12 (quotation omitted).

tracking technologies not only on the login page for its portal but also within the portal itself, making its conduct among the most egregious among the wiretap lawsuits pending against healthcare businesses.

Plaintiff also alleges more than identification by "IP address" (what *Becerra* addressed). She also describes browser fingerprints (which can confirm identity with 99.24% accuracy) and persistent identifiers assigned by Facebook and Google, and how the combination of those identifiers permits Google and Facebook to affirmatively identify individuals. ¶¶ ¶¶ 36, 74-75, 77-78, 81. This is the precise function of the tracking technologies' use of multiple forms of identifying information; the combination permits Google and Facebook to confirm identity sufficiently to use the interceptions to inform individualized advertising. *Kurowski,* 2024 U.S. Dist. LEXIS 126837, at *17-19 (disclosure of IP addresses, with browser fingerprints and other identifiers, combined with health information, violates HIPAA).

Consistent with *Becerra*'s limited reach, courts find HIPAA violations to support wiretap claims without considering the HHS Bulletin and its "Proscribed Combination." *Gaige v. Exer Holdings Co., LLC*, 2025 U.S. Dist. LEXIS 17146, at *10 (C.D. Cal. Jan. 30, 2025) (holding *Becerra* does **not** preclude invoking HIPAA under the ECPA's crime-tort exception, reasoning that "Plaintiff's claims are not premised on a violation of HHS guidance, but rather are based on violations of various statutes and common law…."); *Doe v. Bayhealth Med. Ctr. Inc.*, 2025 Del. Super. LEXIS 154, at *16-17 (Super. Ct. Apr. 2, 2025) (affirming ECPA claim, reasoning "the HHS guidance vacated by *Becerra* has no impact on a plaintiff's disclosure allegations when the plaintiff's claims are based on statutory and common law violations"); *Kurowski*, 2024 U.S. Dist. LEXIS 126837, at *17-20 (finding HIPAA violation even though declining to rely on HHS Bulletin, given interceptions involved users' "status as a…patient" and identifiers other than IP address).

c. Plaintiff Alleges Crimes and Torts Independent of the ECPA Violation.

BCBSMA is wrong to argue (MTD 6) that Plaintiff fails to allege a tortious or criminal purpose "other than the alleged wiretapping itself." Plaintiff alleges that BCBSMA injected the tracking technologies onto its website (the act giving rise to ECPA liability) for the purpose of disclosing the contents of the intercepted communication and facilitating their improper use by third parties, all of

which violates HIPAA and statutory and common law torts. ¶¶ 5-6, 24, 62, 65, 133, 135, 149, 162, 167, 171, 173. Where a business (i) injects tracking technologies for (ii) the purpose of a tortious disclosure to third parties, the better-reasoned cases hold that such tortious disclosure supports the crime-tort exception. *Jarrell*, 2025 U.S. Dist. LEXIS 6169, at *7-8 (a common law privacy claim "constitutes an independent tort…that…arises not from the mere *interception* of [communications] but from *disclosure* of that…material to third parties"); *R.S.*, 2025 U.S. Dist. LEXIS 6338, at *16 ("R.S. does not allege that Prime Healthcare's interception *itself* violated HIPAA…. Instead, R.S. asserts that the violation stems from Prime Healthcare's intentional *disclosure* of the collected Private Information, which constitutes a 'further impropriety' independent [of] Prime Healthcare's *interception*."); *Stein v. Edward-Elmhurst Health*, 2025 U.S. Dist. LEXIS 31273, at *12-17 (N.D. Ill. Feb. 21, 2025) (finding independent act based in part upon careful analysis of ECPA statutory text, observing "[c]ourts from coast to coast have recognized that a violation of HIPAA can give rise to the crime-tort exception").[8]

d. BCBSMA's Commercial Motives Do Not Negate Its Tortious Purpose.

The fact that BCBSMA had a commercial motive (*see* MTD 6) does not immunize it from liability. "Many crimes and torts are motivated by a desire to make money, and it 'defies common sense that a clearly harmful act could escape liability as long as it was done for profit.'" *Kurowski*, 2024 U.S. Dist. LEXIS 126837, at *16 (quoting *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 928 (D. Minn. 2024)). "[N]othing in [the ECPA] requires that a party act with the *sole* purpose of committing the underlying crime or tort"; secretly deploying tracking technologies to improve "profit margins…does not mean [the defendant] didn't also 'consciously desire' to make unauthorized disclosures" of patient communications. *Id.; Lugo v. Inova Health Care Servs.*, 2025 U.S. Dist. LEXIS 55590, at *18 (E.D. Va. Mar.

[8] BCBSMA's circuit authorities on this argument (MTD 6) involve factual situations much different than here; subsequent decisions applying those authorities permit claims to go forward on similar facts. *See Caro v. Weintraub*, 618 F.3d 94, 96-97 (2d Cir. 2010) (cited by BCBSMA; involving recording of audio conversation); *Gay v. Garnet Health*, 2024 U.S. Dist. LEXIS 168515, at *7-14 (S.D.N.Y. Sept. 16, 2024) (applies *Caro*; affirms claim for tracking technology on healthcare website); *Kane v. Univ. of Rochester*, 2024 U.S. Dist. LEXIS 48515, at *12-23 (W.D.N.Y. Mar. 19, 2024) (same); *In re Google Inc.*, 806 F.3d 125 (3d Cir. 2015) (cited by BCBSMA; suit directly against marketer rather than website owner); *Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, 2024 U.S. Dist. LEXIS 177625, *7-12 (E.D. Pa. Sep. 30, 2024) (applying *In re Google*; affirming ECPA claim relating to secret tracking technology use on healthcare provider website).

25, 2025) ("Courts around the country…have upheld…the crime-tort exception where the alleged criminal purpose for the interception was a violation of HIPAA or a state health privacy law, despite the healthcare provider having an additional commercial, marketing, or advertising purpose"); *Cooper v. Mt. Sinai Health Sys., Inc.*, 2024 U.S. Dist. LEXIS 134570, at *26 (S.D.N.Y. July 30, 2024) ("theory that the presence of a primary financial motive inoculates a defendant from liability under the ECPA is wrong").[9]

2. Plaintiff Alleges the Interception of the Contents of Her Communications.

BCBSMA argues Plaintiff alleges no interception of "contents" of a communication but only "record information." MTD 7-8. Plaintiff alleges interceptions revealing patient status through the deployment of tracking technologies in the patient portal. *See* § II-A, C, *supra*. Interceptions that disclose patient status disclose "contents." *Meta Pixel Healthcare*, 647 F. Supp. 3d at 795-96 (communications involve "contents" if they reveal patient status); *M.G. v. Therapymatch, Inc*, 2024 U.S. Dist. LEXIS 166534, at *12 (N.D. Cal. Sept. 16, 2024)(same); *Castillo,* 2024 U.S. Dist. LEXIS 207197, at *15 (same).

Plaintiff additionally details in her complaint how BCBSMA configured its website to use descriptive URLs, which reveal the substance of the information a consumer requests and BCBSMA provides in response, including the precise actions taken in the MyBlue patient portal, and also to disclose webpage titles, which further reveal the substance of information communicated on particular pages. *See* §§ II-A, *supra.* BCBSMA's suggestion that navigating through webpages cannot involve "contents" of communications "misses the mark" because "[o]ften, a location identifier [i.e., a URL]…comprises part of a communication's substance." *In re Google*, 806 F.3d at 136. Where descriptive URLs are used, "the categories of content and non-content [record information] overlap and are not mutually exclusive." *Doe v. Post Acute Med., LLC*, 2025 U.S. Dist. LEXIS 26667, at *13 (M.D. Pa. Feb. 14, 2025); *Meta Pixel Healthcare*, 647 F. Supp. 3d at 795 ("descriptive URLs" are "'contents'"); *Castillo* 2024 U.S. Dist. LEXIS

[9] *See also Mayer v. Midwest Physician Admin. Servs., LLC*, 2025 U.S. Dist. LEXIS 60486, at *10-11 (N.D. Ill. Mar. 31, 2015) ("no defense to a HIPAA charge" supporting ECPA claim that hospital "wanted to make money by doing so"); *R.S.*, 2025 U.S. Dist. LEXIS 6338, at *18-19 ("The Court joins those courts that have held a monetary purpose does not insulate a party from liability under the ECPA."); *In re BetterHelp, Inc. Data Disclosures Cases*, 2024 U.S. Dist. LEXIS 124321, at *15 (N.D. Cal. July 15, 2024) ("trying to make money" consistent with criminal purpose relating to HIPAA); *Castillo v. Costco Wholesale Corp.*, 2024 U.S. Dist. LEXIS 207197, at *18-19 (W.D. Wash. Nov. 14, 2024) (same).

207197, at *15 (URLs disclosing "underlying health conditions" are "contents"); *M.G.*, 2024 U.S. Dist. LEXIS 166534, at *12 (same); *R.C.*, 733 F. Supp. 3d at 902 ("descriptive URLs" are contents); *Yoon v. Meta Platforms, Inc.*, 2024 U.S. Dist. LEXIS 234457, at *13-15 (N.D. Cal. Dec. 30, 2024) (same).

3. Plaintiff Alleges the Use of an Intercepting Device.

BCBSMA's argument that "numerous courts" (it cites two) hold software is not a "device" (MTD 8) is remarkable in that it made the same argument in state court regarding the Massachusetts Wiretap Act, arguing Massachusetts act was "narrower" than the ECPA, the latter of which includes "electronic" devices within its scope. Ex. 2 (attached hereto) at 13. The great weight of authority provides that an "electronic device" includes tracking technologies and other interceptions accomplished through a combination of hardware and software. *Meta Pixel Healthcare*, 2022 U.S. Dist. LEXIS 230754, at *37 (Meta Pixel intercepts "through the use of 'devices'"); *Luis v. Zang*, 833 F.3d 619, 634 (6th Cir. 2016) (computer spyware a "device"); *United States v. Hutchins*, 2018 U.S. Dist. LEXIS 183898, at *34–37 (E.D. Wis. 2018) (software is "device" given "ordinary meaning of" [a] "device"; expressly rejecting BCBSMA's case, *Potter*).[10] Notably, no court has dismissed any case on this argument among dozens of federal wiretap cases relating to tracking technologies pending across the country (including those Plaintiff cites here).[11]

B. *Plaintiff States a Claim Under Chapter 93A.*

1. BCBSMA Operates in Trade or Commerce

BCBSMA argues it is not subject to suit under Chapter 93A because it does not operate in trade or commerce. MTD 9-11. BCBSMA pretends the only support for Plaintiff's position is a Massachusetts

[10] *See also In re Carrier IQ, Inc. Consumer Privacy Litig.*, 78 F. Supp. 3d 1051, 1084 (N.D. Cal. 2015) ("[S]oftware [which records websites visited] is a 'device' for purposes of the [ECPA]."); *Klumb v. Goan*, 884 F. Supp. 2d 644, 661 (E.D. Tenn. 2012) ("program has been installed on a computer" to reroute internet communications).

[11] BCBSMA's cases (MTD 16) either do not hold as BCBSMA contends or construe materially different statutes. BCBSMA cites *Jacome v. Spirit Airlines*, 2021 Fla. Cir. LEXIS 1435 (Fla. Cir. Ct. June 17, 2021), but the court there construed **Florida** law, which "exclude[s] '[a]ny communication from an electronic or mechanical device which permits the tracking of the movement of a person or an object,'" *id.* at *7–8 (quoting Fla. Stat. § 934.02(12)(c)), and therefore, "software which *tracks* a website browser's movements…is thus definitionally excluded." *Id.* The ECPA contains no such exclusion; *Jacome*'s reasoning does not apply. In *Potter v. Havlicek*, the only defendant was a computer spyware software company, and the court held that the software "**alone** is not a…device" because software "**alone** cannot be used to intercept communications." 2008 U.S. Dist. LEXIS 122211, at *23 (S.D. Ohio June 23, 2008) (emphasis added). The court's use of the word "alone" implies that even if software "alone" is not a device, software in combination with hardware **may** be an "intercepting device." That is Plaintiff's argument here—that interceptions were accomplished by software executed on users' computing devices. ¶ 161.

Superior Court case—*Blue Cross Blue Shield of Mass., Inc. v. Flexible Fundamentals, Inc.*, 2023 Mass. Super. LEXIS 40 (Super. Ct. May 3, 2023). *Flexible Fundamentals*, however, applies controlling precedent.

In particular, in *Wheatley v. Mass. Insurers Insolvency Fund*, 456 Mass. 594 (2010), the SJC held that a 1996 amendment to insurance law expressly defined a state-created insolvency fund for Massachusetts health insurers as being "persons who engage 'in the business of insurance.'" *Id.* at 601-09. That statutory amendment was designed to overrule SJC decisions that had held the insolvency funds were not subject to Chapter 93A because they did not operate in trade or commerce. *Id.* at 607-09. The SJC explained that "the Legislature 'plainly expressed' its intent to subject the insolvency fund to consumer actions under G.L c. 93A §9(1), when it amended G.L. c. 176D §1(a)." *Id.* at 607-08. A later decision confirmed the fund is subject to consumer suits under Chapter 93A for **all** unfair and deceptive practices, not only unfair insurance claims practices. *Wheatley v. Mass. Insurers Insolvency Fund*, 465 Mass. 297, 300-04 (2013).

The Superior Court's decision in *Flexible Fundamentals* is correct and required by the *Wheatley* decisions because BCBSMA is included in the same statutory list of persons addressed in the *Wheatley* decisions as being in the "business of insurance." 2023 Mass. Super. LEXIS 40, at *7. There is no principled basis to distinguish BCBSMA's amenability to 93A liability from state-created insolvency funds[12] or to disregard *Wheatley*. Defendants' contrary authorities do not grapple with the SJC's controlling decisions in *Wheatley* (several cases predate *Wheatley*).[13]

2. Plaintiff Alleged Unfair and Deceptive Practices

BCBSMA argues that Plaintiff alleges no unfair or deceptive practice. MTD 11-12. The only Massachusetts cases to have considered whether surreptitious use of tracking technologies violates Chapter 93A have indicated it does. *Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142, 152 (D. Mass. 2024); *Vita v. New England Baptist Hosp.*, 494 Mass. 824, 850 (2024) ("Deception or misrepresentation in a privacy

[12] Indeed, it would be incongruous and frankly bizarre for state-created insolvency funds to be fully subject to consumer suits under Chapter 93A, per *Wheatley*, but for private insurance companies to be exempt.

[13] BCBSMA's attempt to distinguish *Flexible Fundamentals* as involving a "services agreement" and therefore a "commercial role," (MTD 10-11) as opposed to a consumer dispute, is a distinction with no difference, given that the second *Wheatley* decision makes clear that the fact that the insolvency fund (and BCBSMA) are defined expressly as being in the business of insurance means that those entities are subject to **all** consumer suits under Section 9 of Chapter 93A. 465 Mass. at 300-04.

policy may also support a cognizable claim under G. L. c. 93A, and the powerful remedies that statute provides."). BCBSMA's argument that Plaintiff fails to allege she "relied" on BCBSMA's privacy disclosures (MTD 11) ignores that Plaintiff's deception allegations are based upon a confluence of sources, not only the privacy policy but also the reasonable expectations of consumers and the inherently hidden nature of the tracking code (*see* § II-B, *supra*). In any event, reliance is not an element of a Chapter 93A claim. *Aspinall v. Philip Morris*, 442 Mass. 381, 396-97 (2004). Additionally, apart from any affirmative misrepresentation, a failure to disclose tracking technologies is an unfair act under Chapter 93A. *A.J.*, 2024 U.S. Dist. LEXIS 194480, at *8-9.

BCBSMA's argument that its privacy policy, or the Google or Facebook's privacy policies, "foreclose" her claims is wrong. BCBSMA's privacy disclosures were affirmatively deceptive, as set forth above. *See* § II-B, *supra*. As to Google and Facebook's disclosures, the decision the Ninth Circuit affirmed in the case BCBSMA cites for this argument, *Smith v. Facebook, Inc.*, 745 F. App'x 8 (9th Cir. 2018), held that the Facebook terms of service provided a potential consent defense only for claims "against Facebook." *Smith v. Facebook Inc.*, 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017). There was no suggestion that such terms could be invoked by website owners, who were also defendants in the case. *Smith* has been distinguished on this basis in later cases. *Doe v. Va. Mason Med. Ctr.*, 2020 Wash. Super. LEXIS 7567, *4 (Super. Ct. 2020) (distinguishing *Smith* in case involving Meta Pixel against a hospital which "does not hinge on the relationship between the Plaintiff and Facebook"); *Bayhealth*, 2025 Del. Super. LEXIS 154, at *18-19 (collecting "multiple cases" affirming ECPA claims and "distinguish[ing] *Smith* in their analyses"). Notably, in a more recent case asserting federal wiretap claims **against Facebook** relating to Meta Pixel on health-related websites, the court held that the plaintiffs "raise potentially strong claims on the merits" and that website users did **not** consent to Facebook's collection of browsing activity on healthcare websites. *Meta Pixel Healthcare*, 2022 U.S. Dist. LEXIS 230754, at *4–5, 24–33.

BCBSMA's argument that Plaintiff must plead the specifics of her communications (date, time, etc.) (MTD 11) also misses the mark, as "the specificity requirement extends only to the particulars of

the allegedly misleading statement itself, not the circumstance of the plaintiff's conduct in reliance on it." *O'Hara v. Diageo-Guinness USA, Inc.*, 306 F. Supp. 3d 441, 461 (D. Mass. 2018) (internal quotations omitted). The precise date and time Plaintiff visited the website is immaterial to her claim, given that the tracking technologies operated consistently during the class period and BCBSMA's disclosures did not change. Moreover, BCBSMA knows full well when Plaintiff used the MyBlue portal, as it admits it maintains logs of those interactions. *See* MTD 3-4. BCBSMA's argument also contradicts the position it took in its motion to dismiss Plaintiff's original complaint, where it insisted its privacy policies were communicated to Plaintiff to a sufficient degree to be relevant to a Massachusetts Wiretap Act claim.[14]

Notably, 93A requires that courts "construing [Chapter 93A] be guided by the interpretations given by the Federal Trade Commission" to the FTC Act. M.G.L. c. 93A § 2(b). As Plaintiff alleges, the FTC is clear: "Don't use behind-the-scenes tracking technologies that contradict your privacy promises or otherwise harm consumers." ¶ 141[15] BCBSMA failed to heed that directive.

3. Plaintiff Served an Adequate Demand Letter

BCBSMA's argument on Plaintiff's demand letter mirrors its challenge to Plaintiff's complaint. It cites cases for generic propositions regarding demand letters and presents no analysis of the actual content of Plaintiff's letter. Like Plaintiff's complaint, Plaintiff's demand letter details the precise conduct that is unfair or deceptive, and the harm Plaintiff suffered as a result. *See* MTD Ex. 3. The letter is sufficient.

C. *Plaintiff States a Claim under the MRPA*

The MRPA, M.G.L. c. 214 § 1B, codifies particular common law privacy torts. *See Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 409 Mass. 514, 519 (1991). Plaintiff asserts two alternative theories of tort liability under the MRPA—(i) intrusion upon seclusion and (ii) public disclosure of private facts, ¶¶ 186-90, torts the Massachusetts Supreme Judicial Court ("SJC") has held are incorporated within the MRPA's "broad" terms, *Polay v. McMahon*, 468 Mass. 379, 382-84 (2014).

---

[14] Defendant's memorandum in support of its motion to dismiss Plaintiff's original complaint is attached as **Exhibit 2**.

[15] *See* https://web.archive.org/web/20230801193706/https://www.ftc.gov/business-guidance/blog/2023/07/protecting-privacy-health-information-bakers-dozen-takeaways-ftc-cases.

Four Massachusetts Superior Court justices and one federal judge have concluded that the surreptitious use of tracking technologies states a claim for violation of the MRPA. *Bos. Med. Ctr.*, 2023 Mass. Super. LEXIS 674, at *11-12; *Emerson Hosp.*, 2023 Mass. Super. LEXIS 673, at *11-12; *Alves v. BJ's Wholesale Club, Inc.*, 2023 Mass. Super. LEXIS 59, at *13-17 (Super. Ct. June 21, 2023); *Tenet*, 731 F. Supp. 3d at 151-52 (D. Mass. 2024); *Doe v. Partners Healthcare Sys.*, No. 1984CV01651-BLS1 (Mass. Super. Ct. Nov. 20, 2020) at 44 (motion to dismiss decision and transcript attached as **Exhibit 3**) (plaintiff "states a viable claim for invasion of the right of privacy" under MRPA based on the same allegations as those here). The SJC has also "emphasize[d]," in a case similar to this one, "that the Legislature has provided …statutory and common-law causes of action…directly applicable to misrepresentations or misuse of private medical information" that are likely "cognizable" under the facts alleged here, including the MRPA. *Vita*, 494 Mass. at 849-50. **There is no contrary MRPA authority**.

BCBSMA argues (MTD 13) that Plaintiff "does not identify the specific pages or any communications that were disclosed." As explained above, this is not true. Plaintiff alleges she visited the patient portal to obtain information about her policy and that those communications were intercepted because BCBSMA remarkably deployed hidden tracking technologies within its patient portal.

As to intrusion upon seclusion, the SJC has held that allegations of "electronic surveillance" state an MRPA claim. *Polay*, 468 Mass. at 382-84 (2014). Every court to apply *Polay* to website tracking technologies has found it supports an MRPA claim. *Bos. Med. Ctr.*, 2023 Mass. Super. LEXIS 674, at *11-12; *Emerson*, 2023 Mass. Super. LEXIS 673, at *11-12; *Alves*, 2023 Mass. Super. LEXIS 59, at *13-17. The intrusion claim is bolstered by BCBSMA's deceptive disclosures. *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 602 (9th Cir. 2020) (affirming intrusion claim where "tracking" contradicted "privacy disclosures"); *Google*, 806 F.3d at 150-52 (reversing dismissal of intrusion claim where practices contradicted Google's own disclosures).[16]

[16] *See also Meta Pixel Healthcare*, 647 F. Supp. 3d at 799-800 (defendant's violation of own "policies…tend[s] to support" a "fairly strong" intrusion claim); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1076 (N.D. Cal. 2021) (intrusion claim where company's "privacy disclosures…failed to acknowledge [the] tracking …[and] suggest[ed] that users' information would not

As to disclosure of private facts, BCBSMA argues the communications were not personal enough. To the contrary, BCBSMA's deployment of tracking technologies within the MyBlue portal makes this case more egregious than those sustaining MRPA claims for interceptions involving public-facing medical websites. *Emerson*, 2023 Mass. Super. LEXIS 673, at *11-12; *Tenet*, 731 F. Supp. at 151-52.[17]

D. *Plaintiff States a Claim for Breach of Fiduciary Duty*

BCBSMA's only argument on Plaintiff's breach of fiduciary duty claim is that insurers owe no fiduciary duty to policyholders arising from the insurer-policyholder relationship. Plaintiff, however, does not allege a general fiduciary relationship based on that relationship alone but a more limited fiduciary duty in connection with healthcare-related communications, based on the trust healthcare consumers repose in insurers when they communicate with insurers about their medical care. ¶¶ 204-06.

Massachusetts law supports Plaintiffs' claim. A fiduciary duty arises "[w]herever two persons stand in such a relation that, while it continues, confidence is necessarily reposed by one, and the influence which naturally grows out of that confidence is possessed by other…." *Warsofsky v. Sherman*, 326 Mass. 290, 292-93 (1950). In *Warsofsky*, the SJC found a duty in the context of information provided to a bank by one of its customers in connection with a loan application, even though a bank/customer relationship is not generally fiduciary. *Id.* at 293-95. The SJC has likewise affirmed a similar duty with respect to a stockbroker/customer relationship, even though such relationships are not generally fiduciary, holding the existence of a duty presents a "factual inquiry." *Patsos v. First Albany Corp.*, 433 Mass. 323, 330-31, 336 (2001). The Superior Court found that a similar limited fiduciary duty may arise in the insurance context. *Wilson Farm. v. Berkshire Life Ins. Co.*, 2002 Mass. Super. LEXIS 376, at *21-23 (Super. Ct. Oct. 31, 2002).[18]

be tracked"); *Doe v. Medstar Health, Inc.*, 2020 Md. Cir. Ct. LEXIS 139, at *6 (Cir. Ct. Aug. 5, 2020) (tracking technologies contradicted "express promises of privacy to patients").

[17] *See also Brahm*, 2024 U.S. Dist. LEXIS 114827, at *19-21 (affirming disclosure of private facts claim based on secret use of tracking technologies); *Medstar*, 2020 Md. Cir. Ct. LEXIS 139, at *6 (same); *Lamarr*, 2024 Ind. Super. LEXIS 107, at *17-18 (same); *R.C.*, 733 F. Supp. 3d at 888-95 (same).

[18] Other cases involving the surreptitious use of tracking technologies on healthcare websites are at least informative on the importance of protecting medical-related communications, even if those defendants were healthcare providers rather than insurers. *See Emerson*, 2023 Mass. Super. LEXIS 673, at *5-7; *Tenet*, 731 F. Supp. 3d at 149-50; *A.J.*, 2024 U.S. Dist. LEXIS 194480, at *10-12; *Partners Healthcare* (margin order, attached as Ex. 3) (affirming breach of fiduciary duty claim); *Vita*, 494

Here, Plaintiff's allegations that BCBSMA owed a limited fiduciary duty in connection with communications with policyholders are sufficient to state a claim. ¶¶ 203-09.

E. *Plaintiff States a Claim for Breach of Confidence*

BCBS's only argument on Plaintiff's breach of confidence claim (MTD 17-18) is that the claim does not exist. The SJC recognized such a claim with respect to the physician-patient relationship in *Alberts v. Devine*, 395 Mass. 59, 68-69 (1985), holding that "a duty of confidentiality arises from [that] relationship, and…a violation of that duty resulting in damages, gives rise to a cause of action sounding in tort." Although the SJC has not considered whether an insurer has a similar duty, it did ground the claim in "public policy [that] favors the protection of a patient's right to confidentiality," *id.* at 67—policy that applies equally to any business that receives healthcare information, including insurers. That courts have not **yet** applied *Alberts* to insurers is no reason to reject the claim, as *Alberts* explained:

> No litigant is automatically denied relief solely because he presents a question on which there is no Massachusetts judicial precedent. It would indeed be unfortunate, and perhaps disastrous, if we were required to conclude that at some unknown point in the dim and distant past the law solidified in a manner and to an extent which makes it impossible now to answer a question which had not arisen and been answered prior to that point. The courts must, and do, have the continuing power and competence to answer novel questions of law arising under ever changing conditions of the society which the law is intended to serve.

*Id.* at 68-69. The Court should recognize the claim, consistent with *Alberts*, applicable to health insurers, given BCBSMA's egregious conduct in deploying tracking technologies on a secure patient portal.

F. *Plaintiff States a Claim for Negligence*

On Plaintiff's negligence claims, BCBSMA again ignores on-point authority affirming the same Massachusetts claim on substantively the same facts. *Tenet*, 731 F. Supp. 3d at 149 (affirming negligence claim for undisclosed use of tracking technologies under Massachusetts law); *A.J.*, 2024 U.S. Dist. LEXIS 194480, at *9 (same); *see also Vita*, 494 Mass. at 849-50 (negligence claim "cognizable" based on undisclosed use of tracking technologies). In any event, its specific arguments each lack merit.

---

Mass. at 849-50 (fiduciary duty claim "cognizable" for secret use of tracking technologies); *Shedd v. Sturdy Mem. Hosp.*, 2022 Mass. Super. LEXIS 7, at *24-25 (Super. Ct. Apr. 5, 2022) (fiduciary claim for "failure to protect highly confidential [medical] information"); *Brahm*, 2024 U.S. Dist. LEXIS 114827, at *17-19 (fiduciary duty breached by eavesdropping through tracking technologies); *Lamarr*, 2024 Ind. Super. LEXIS 107, at *22-24 (same); *Cooper*, 2024 U.S. Dist. LEXIS 134570, at *31-34 (same).

***The Economic Loss Doctrine Does Not Apply.*** BCBSMA's argument on the economic loss doctrine (MTD 15) ignores that Massachusetts law permits recovery of economic losses in negligence cases where a duty arises from a special relationship between the parties—as it does here, for the same reasons that Plaintiff asserts fiduciary and breach of confidence claims. *See* §§ III-D, E, *supra*; *Tenet*, 2024 U.S. Dist. LEXIS 73596, at *9 (rejecting economic loss doctrine argument in case involving tracking technologies on medical website, given special relationship between healthcare consumers and providers); *Portier v. NEO Tech. Sols.*, 2019 U.S. Dist. LEXIS 227494, at *47-60 (D. Mass. Dec. 31, 2019) (same) (collecting authorities); *Shedd*, 2022 Mass. Super. LEXIS 7, at *20-23 (holding economic loss doctrine does **not** apply to failure to protect "confidential medical information").

***Plaintiff Alleges a Duty.*** The scope of a duty giving may be informed by policies underlying privacy-related statutes, even if not defined directly by them in terms of *per se* liability. *Bennett v. Eagle Brook County Store, Inc.*, 408 Mass. 355, 358-59 (1990) (even though "violation of a statute does not by itself establish breach of duty," it does provide "some evidence of the defendant's negligence") (quotations omitted).[19] That is precisely what Plaintiff alleges here—a duty informed by privacy laws, norms, and ethical standards. ¶¶ 115-48, 214-15; *Garcia v. Columbia Med. Ctr.*, 996 F. Supp. 617, 627 (E.D. Tex. 1998). Plaintiff sufficiently alleges a duty, the contours of which will be informed by discovery.

***Plaintiff Alleges Causation.*** BCBSMA's causation argument (MTD 16-17) depends on its observation that Plaintiff does not allege what targeted advertisements were shown to her based on intercepted communications (an unknowable fact without examining Google and Facebook's proprietary code), and then assumes Plaintiff's claim hinges upon such proof. This is not so. Plaintiff's theory of harm is the wrongful acquisition and misuse of her confidential communications—the harm occurs at the time of the disclosure. No court affirming claims on similar facts (including the cases cited in this

[19] *See also Lamarr*, 2024 Ind. Super. LEXIS 107, at *11-12 (statutory duties under FTC Act and HIPAA can "inform" scope of duty at common law even without negligence *per se*). BCBSMA's authorities are either unpersuasive or not to the contrary. *Roe No. 1 v. Children's Hosp. Med. Ctr.*, 469 Mass. 710, 719-20 (2014), rejects a rule of *per se* liability but confirms statutes are "relevant" to defining the scope of duties. *Williams v. TMC Health*, 2024 U.S. Dist. LEXIS 178452, *18-20 (D. Ariz. Sept. 30, 2024) likewise considered an assertion of *per se* duty, rather than addressing whether HIPAA might inform the scope of a duty defined at common law, and in any event, does not construe Massachusetts law.

section on negligence) has required a plaintiff at the pleading stage to do the impossible—to trace the operation of proprietary computer code to link the interceptions at issue to particular advertisements.

***Plaintiff Alleges Harm.*** BCBSMA argues for Plaintiff's negligence claim only (MTD 17) that Plaintiff fails to allege "harm." BCBSMA's argument depends on its pretending Plaintiff's summary of damages (¶ 149) are her only allegations. It ignores allegations regarding the significant economic value the intercepted communications have to consumers, BCBSMA, and the third-party eavesdroppers and advertisers that monetize the intercepted communications—that is, that there is an established, mature market for the intercepted communications.[20] Such allegations are sufficient at this stage, even if expert evaluation of that market may later be necessary to quantify damages. *Emerson*, 2023 Mass. Super. LEXIS 673, *5 (allegations that "private medical information was disclosed to Facebook" and defendant "and Facebook monetized [plaintiff's] personal health information without compensating him" are sufficient under Massachusetts law); *Meta Pixel Healthcare*, 2024 U.S. Dist. LEXIS 15391, at *12 (allegation, even without quantification or expert testimony, that "Meta unjustly profited from the data taken," is sufficient); *Meta Pixel Tax Filing*, 724 F. Supp. 3d at 1019-24 (allegations of "loss of privacy," "diminution in value," and "loss of the benefit of [the] bargain" sufficient even if not quantified; "[i]f a user shares information with the expectation that it will be protected but the recipient does not actually protect it, then the user has surrendered in that transaction more than she otherwise would have"); *Gay*, 2024 U.S. Dist. LEXIS 168515, at *17-18 (similar); *Lamarr*, 2024 Ind. Super. LEXIS 107, at *7-8 (similar).

G. *Plaintiff States a Claim for Breach of Contract.*

BCBSMA's arguments on Plaintiff's breach of contract claim, including that "Plaintiff does not—and cannot—allege that BCBSMA agreed to protect her interactions with BCBSMA's Website," (MTD

[20] ¶¶ 22-25 (describing value of privacy to consumers); ¶¶ 173, 176 (describing "commercial advantage" BCBSMA obtained in exchange for permitting Google and Facebook to eavesdrop on patient communications, resulting in increased "revenue" for BCBSMA); ¶ 37-39 (describing how Meta Pixel contributes to building of individual profiles from which "Facebook derives most of its revenue"); ¶¶ 45-48 (Google Analytics key part of building "detailed profiles on individuals" from which "Google derives a substantial portion of its revenue"); ¶¶ 76, 86-87, 93, 95, 102, 106 (detailing how Google and Facebook extracted commercial value from the information intercepted through the tracking technologies). That Plaintiff has not yet quantified damages or presented expert testimony on value does not matter. *Lee v. Conagra Brands, Inc.,* 958 F.3d 70, 80-81 (1st Cir. 2020) (plausible, even if general, allegations of benefit-of-the-bargain damages at pleadings stage sufficient).

19) ignore BCBSMA's own privacy policy, through which it made false promises to consumers regarding its disclosures of website communications to third parties. *See* § II-B, *supra.* There is no doubt that BCBSMA assented to the terms of its own policies (it drafted them), and it is plausible that Plaintiff assented too, given her use of the patient portal, which almost certainly involved assent to BCBSMA's policies. Indeed, BCBSMA has previously argued its privacy policies were sufficiently communicated to Plaintiff to bind her,[21] a contention incompatible with its attempt to now disavow its own policies.

Also, contrary to BCBSMA's argument (MTD 18-19), Plaintiff's provision of information was "required" in that BCBSMA's conduct forced the interceptions to occur without Plaintiff's consent. On top of that, even absent an express contract, a contract may be implied at law to confer a remedy, as confirmed by the **only** Massachusetts authorities to have considered the same claims as here. *Emerson*, 2023 Mass. Super. LEXIS 673, at *8-9; *Tenet*, 731 F. Supp. 3d at 149-50; *Vita*, 494 Mass. at 849-50 (implied contract "cognizable" based on undisclosed use of tracking technologies).[22]

H. *Plaintiff States a Claim for Unjust Enrichment*

BCBSMA makes two indistinguishable arguments—that Plaintiff "could not have reasonably expected compensation" and that Plaintiff did not "expect to receive payment." MTD 19-20. Courts have considered and rejected this argument—that an unjust enrichment claim cannot exist when a defendant enriches itself at plaintiff's expense without plaintiff's knowledge—under substantively the same facts. *A.J.*, 2024 U.S. Dist. LEXIS 194480, at *13-14 (rejecting same argument); *Tenet*, 731 F. Supp. 3d at 150-51; *see also Emerson*, 2023 Mass. Super. LEXIS 673, at *9-11 (affirming unjust enrichment claim under same facts); *Vita*, 494 Mass. at 849-50 (unjust enrichment claim "cognizable").

## IV. CONCLUSION

The Court should deny BCBSMA's motion to dismiss.

---

[21] *See* Exhibit 2 (attached hereto) at 18.

[22] Well-reasoned authorities from other jurisdictions are in accord, particularly where a published privacy policy includes false promises of non-disclosure. *Lamarr*, 2024 Ind. Super. LEXIS 107, at *19-21 (affirming implied contract claim based in part on "failure [of hospital] to comply with [its] privacy policy"); *Bon Secours*, 2021 Ohio Misc. LEXIS 3985, at *13-14; *Elkins v. Bartholomew Cnty. Pub. Hosp.*, 2024 Ind. Super. LEXIS 340, at *7-8 (Super. Ct. Dec. 16, 2024).

Dated: April 18, 2025

Respectfully submitted,

*/s/ Patrick J. Vallely*

SHAPIRO HABER & URMY LLP
Edward F. Haber (BBO #215620)
Michelle H. Blauner (BBO #549049)
Patrick J. Vallely (BBO #663866)
One Boston Place
Suite 2600
Boston, MA 02108
(617) 439-3939 – Telephone
(617) 439-0134 – Facsimile
ehaber@shulaw.com
mblauner@shulaw.com
pvallely@shulaw.com

***Counsel for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading was filed electronically through the Court's electronic filing system and that notice of this filing will be sent to all counsel of record in this matter by operation of the Court's ECF system.

Dated: April 18, 2025

*/s/ Patrick J. Vallely*
Patrick J. Vallely