**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| KATHLEEN VITA,<br><br>Plaintiff,<br><br>v.<br><br>BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS, INC. and BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS HMO BLUE, INC.,<br><br>Defendants. | Case No. 1:25-cv-10420-LTS<br><br>**Leave to File Granted on April 25, 2025 (Doc. No. 17)** |

**DEFENDANTS' REPLY IN SUPPORT OF**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**


I. Plaintiff Fails to State a Claim for Violation of the ECPA (Count I). .............................. 1

II. Plaintiff Fails to State a Claim Under Chapter 93A (Count II). ....................................... 4

a. BCBSMA Does Not Operate in Trade or Commerce. ........................................... 4

b. Plaintiff Has Not Alleged Unfair and Deceptive Practices. .................................. 4

c. Plaintiff Did Not Serve an Adequate Demand Letter. .......................................... 5

III. Plaintiff's Massachusetts Right to Privacy Act Claim (Count III) Fails. .......................... 5

IV. Plaintiff Fails to State a Claim for Breach of Fiduciary Duty (Count IV). ........................ 7

V. Plaintiff Fails to State A Claim for Negligence (Count V). ............................................... 8

VI. Plaintiff Fails to State a Claim for Breach of Confidence (Count VI). .............................. 9

VII. Plaintiff Fails to State a Claim for Breach of Contract (Count VII). .............................. 10

VIII. Plaintiff Fails to State a Claim for Unjust Enrichment (Count VIII). ............................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alberts v. Devine*,
395 Mass. 59 (1985) .......... 9

*Alves v. BJ's Wholesale Club*,
2023 WL 4456956 (Mass. Super. June 21, 2023) .......... 6

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010) .......... 1

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023) .......... 4

*Doe I v. Google, LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .......... 2

*Doe v. Boston Medical Center Corp.*,
2023 WL 7105628 (Mass. Super. Sep. 14, 2023) .......... 6

*Doe v. Emerson Hospital*,
2023 WL 8869624 (Mass. Super. Nov. 22, 2023) .......... 6

*Doe v. Partners Healthcare*,
No. 1984CV01651-BLS1 (Mass. Super. Ct. Nov. 20, 2020 .......... 6

*Doe v. Tenet Healthcare Corp.*,
731 F. Supp. 3d 142 (D. Mass. 2024) .......... 4, 6

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 4, 6

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
806 F.3d 125 (3d Cir. 2015) .......... 1

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 6

*In re Zynga Priv. Litig.*,
750 F.3d 1098, (9th Cir. 2014) .......... 4

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Juliano v. Simpson*,
962 N.E.2d 175 (Mass. 2012)........................................................................................8

*Katz-Lacabe v. Oracle America, Inc.*,
2024 WL 1471299 (N.D. Cal. Apr. 3, 2024)..................................................................3

*Mulder v. Kohl's Dep't Stores, Inc.*,
865 F.3d 17 (1st Cir. 2017) ............................................................................................5

*Nienaber v. Overlake Hosp. Med. Ctr.*,
2025 WL 692097 (W.D. Wash. Mar. 4, 2025)..............................................................2

*O'Hara v. Diageo-Guinness, USA, Inc.*,
306 F. Supp. 3d 441 (D. Mass. 2018).............................................................................5

*Portier v. NEO Tech. Sols.,* 3:17-CV-30111-TSH,
2019 WL 7946103 (D. Mass. Dec. 31, 2019).................................................................9

*Portier v. NEO Tech. Sols.,* 3:17-CV-30111-TSH,
2020 WL 877035 (D. Mass. Jan. 30, 2020) ...................................................................9

*Okash v. Essentia Health*,
2025 WL 642913 (D. Minn. Feb. 27, 2025)...................................................................2

*Roberts v. Charlotte Mecklenburg Hosp. Auth.*,
2025 WL 880538 (W.D.N.C. Mar. 20, 2025) ................................................................2

*Segelman v. City of Springfield*,
561 F. Supp. 2d 123 (D. Mass 2008)............................................................................10

*Sussman v. Am. Broad. Cos., Inc.*,
186 F.3d 1200 (9th Cir. 1999)........................................................................................1

*United States v. Vest*,
639 F. Supp. 899 (D. Mass. 1986)..................................................................................2

*Vita v. New England Baptist Hospital*,
494 Mass. 824 (2024).....................................................................................................6

*Warsofsky v. Sherman,*,
93 N.E.2d 612 (Mass. 1950)..........................................................................................7

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Williams v. TMC Health*,
2024 WL 4364150 (D. Ariz. Sept. 30, 2024) ..................................................................... 3

*Wilson Farm v. Berkshire Life Insurance Co.,*
2002 Mass. Super. LEXIS 376, at *22-26 (Super. Ct. Oct. 31, 2002) ....................................... 7

Plaintiff's Opposition confirms that she has not and cannot state any claim for relief. The legal deficiencies present in Plaintiff's bare bones 2023 Superior Court Complaint remain, and her failure—twice—to allege any details about her own experience on BCBSMA's website cannot support a claim. The Amended Complaint should be dismissed in its entirety, with prejudice.

## I. <u>**Plaintiff Fails to State a Claim for Violation of the ECPA (Count I).**</u>

Plaintiff concedes that without the crime-tort exception, her Electronic Consumer Protection Act ("ECPA") claim fails as a matter of law, because absent that exception, which Plaintiff fails to adequately allege, only one party need consent to a statutory interception. Doc. No. 15 ("Opp.") at 5. Plaintiff fails to adequately allege both that any information about her was intercepted, and that the crime-tort exception applies. Count I should be dismissed.

First, Plaintiff's Opposition argues, despite case law holding to the contrary, that an intent to wiretap is sufficient to apply the crime-tort exception. *See* Opp. at 5. That is fundamentally incorrect. To invoke the crime-tort exception, the intent to commit a crime or tort must be distinct from the alleged wiretapping itself. *Caro v. Weintraub*, 618 F.3d 94, 99-100 (2d Cir. 2010) ("If, at the moment he hits 'record,' the offender does not intend to use the recording for criminal or tortious purposes, there is no violation.").

Based on this misguided premise, the Opposition argues that the mere decision "to employ the tracking technology on certain pages . . . meets [the crime-tort exception] requirement." Opp. at 5. The case law and plain language of the ECPA, however, distinguish between the alleged crime or tort and the alleged wiretapping required to invoke the exception. *See, e.g.*, *Caro*, 618 F.3d at 99-100; *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 145 (3d Cir. 2015); *Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1203 (9th Cir. 1999).

Reinforcing the infirmity of Plaintiff's position, a federal court recently dismissed an ECPA claim where the plaintiff made virtually the same argument as is set out in the Opposition. *See Nienaber v. Overlake Hosp. Med. Ctr.*, No. 2:23-CV-01159-TL, 2025 WL 692097, at *13 (W.D. Wash. Mar. 4, 2025). There, the plaintiff contended that allegations that "technologies installed by Defendant contemporaneously transmit Plaintiff's communications to third parties" demonstrated that "the alleged tortious or criminal use of the acquired communications is the disclosure itself." *Id.* The court held that the exception did not apply and rejected the same cases cited by Plaintiff here because they did not distinguish "between the interception and the transmission of data." *Id.*; *see* Opp. at 5-6 (relying on cases distinguished in *Nienaber*); *see also Okash v. Essentia Health*, 2025 WL 642913, at *4 (D. Minn. Feb. 27, 2025) (crime-tort exception inapplicable where alleged HIPAA and privacy claim not independent of interception). Plaintiff's ECPA claim should be dismissed for these very same reasons. *See* AC ¶ 2; Opp. at 5.

Second, Plaintiff fails to allege "(1) that the primary motivation, or (2) that a determinative factor in the actor's motivation for intercepting the conversation was to commit a criminal, tortious, or other injurious act." *United States v. Vest*, 639 F. Supp. 899, 904 (D. Mass. 1986). There is no serious argument (and Plaintiff has not alleged one) that BCBSMA, a not-for-profit health plan, used tracking technologies with the *primary purpose* of violating HIPAA, the FTC Act, or any Massachusetts law.[1] *See Roberts v. Charlotte Mecklenburg Hosp. Auth.*, 2025 WL 880538, at *3 (W.D.N.C. Mar. 20, 2025) (dismissing ECPA claim that did not plausibly allege purpose for using tracking technologies "was to breach HIPAA"); *Doe I v. Google, LLC*, 741 F.

[1] Plaintiff also misrepresents the bounds of the crime-tort exception and BCBSMA's arguments when she claims that BCBSMA did not challenge the "state of mind allegations for each tort," thereby somehow satisfying the crime-tort exception. Opp. at 7. BCBSMA challenged the sufficiency of every tort claim brought in this action. Mot. at 13-19.

Supp. 3d 828, 843 n.4 (N.D. Cal. 2024) (dismissing ECPA claim where Google's purpose in offering technology was not "to perpetuate torts on millions of Internet users").

To the contrary, any primary purpose for the alleged use of digital marketing tools, which Plaintiff fails to allege, would have been commercial, and the Opposition concedes as much. Doc. No. 13 ("Mot.") at 6; Opp. at 9. Courts have held that if the *primary purpose* is commercial, then the crime-tort exception does not apply. *See, e.g.*, *Williams v. TMC Health*, No. CV-23-00434-TUC-SHR, 2024 WL 4364150, at *4 (D. Ariz. Sept. 30, 2024) (no crime-tort exception where technologies used to increase profits, to improve website analytics, and for marketing purposes); *Katz-Lacabe v. Oracle America, Inc.*, No. 22-CV-04792-RS, 2024 WL 1471299, at *3, *5 (N.D. Cal. Apr. 3, 2024) ("The fact data collection or sales might at some later point be deemed tortious does not justify application of the crime-tort exception."). Because there is no allegation of a primary criminal or tortious intent, no ECPA claim has been or can be stated.

Third, Plaintiff's ECPA claim also fails as a matter of law because she has not plausibly alleged that the "contents" of any electronic communications were intercepted. Without citation to any specific allegation in the Amended Complaint, Plaintiff claims that she alleged the interception of communications that "reveal[ed] patient status." Opp. at 10. In Plaintiff's 245-paragraph Amended Complaint, the only allegations about Plaintiff's use of BCBSMA's website are set forth in three paragraphs. AC ¶¶ 11, 12, 164. Plaintiff alleges that she "used the BCBS-MA Website to obtain information about her health insurance benefits, including by accessing the MyBlue patient portal." *Id.* ¶ 11. But there is no allegation that any of Plaintiff's particular information from the MyBlue portal or otherwise was transmitted to any third party at any particular time, or even what

Plaintiff did or communicated within the portal or on any other BCBSMA web page, and Plaintiff therefore has not stated a claim under the ECPA.[2] *See* Mot. at 7-8.

Plaintiff also argues that her allegations regarding "descriptive URLs" and webpage titles that *could have been* transmitted are sufficient to satisfy the "contents" element. *See* Opp. at 10; AC ¶ 85. Even if Plaintiff had alleged specific information about her own actual use of URLs (which she has not), courts have distinguished between URLs that reflect mere navigation through a website, which are not protected content, from URLs that reflect a detailed search query made by the website user and may be protected content. *See, e.g.*, *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108-09 (9th Cir. 2014); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 605 (9th Cir. 2020); *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 70 (W.D. Pa. 2023).

## II. Plaintiff Fails to State a Claim Under Chapter 93A (Count II).

### a. BCBSMA Does Not Operate in Trade or Commerce.

Plaintiff argues that *Wheatley* controls, and thus BCBSMA engages in trade or commerce. However, Plaintiff notably ignores the multiple decisions cited by BCBSMA, all of which came *after Wheatley*, specifically finding that BCBSMA does not engage in trade or commerce, and thus cannot be held liable under 93A. *Compare* Mot. at 11-12, *with* Opp. at 9-10 (citing cases).

### b. Plaintiff Has Not Alleged Unfair and Deceptive Practices.

Plaintiff argues that her deception allegations are based on BCBSMA's Privacy Policy and the "reasonable expectations of consumers and the inherently hidden nature of the tracking code."

---

[2] Plaintiff's argument that she should not have to reveal private health information to state a claim lacks merit and is contradicted by cases upon which she relies. *See, e.g.*, *Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142, 147-148 (D. Mass. 2024) (involving detailed and specific allegations by pseudonymous plaintiff about health information allegedly intercepted, how it was intercepted, and how it led to specific health-related advertisements). Sensitive allegations can be protected in various ways, including through pseudonyms, redactions, and sealed pleadings. Regarding Plaintiff's suggestion that she need not plead the specifics of her web activity because BCBSMA allegedly maintains logs of this information (Opp. at 14), it is *Plaintiff's* burden to plead facts necessary to support her claims.

Opp. at 12-13. However, Plaintiff fails to meaningfully allege that or how she was allegedly deceived by BCBSMA's Privacy Policy, or that BCBSMA did not comply with its Privacy Policy. *Compare* Opp. at 12-13, *with* Mot. at 3-4. Moreover, Plaintiff cannot dispute that she failed to allege that she is a social media user such that any particular social media companies could "associate her interactions with BCBSMA to her 'real world identity.'" Mot. at 11. Plaintiff has not adequately alleged any unfair or deceptive practices, much less with the particularity required by Rule 9(b), whose application the Opposition misguidedly disclaims. *See Mulder v. Kohl's Dep't Stores, Inc.*, 865 F.3d 17, 21-22 (1st Cir. 2017) (citations omitted) (Rule 9(b) requires plaintiff to "specifically plead the time, place, and content" of alleged misconduct).

**c. Plaintiff Did Not Serve an Adequate Demand Letter.**

Plaintiff argues that her demand letter "details the precise conduct that is unfair or deceptive" and the harm Plaintiff suffered. Opp. at 14. Not so. Plaintiff's letter, like her Amended Complaint, provided no meaningful details regarding her personal experience with BCBSMA's website. Mot. Ex. 3 at 2-4. This prerequisite to stating a claim under 93A, too, is lacking.

**III. <u>Plaintiff's Massachusetts Right to Privacy Act Claim (Count III) Fails.</u>**

In support of her Massachusetts Right to Privacy Act ("MRPA") claim, Plaintiff cites a series of cases that she claims, without explanation, are "based on the same allegations as those here." Opp. at 15. But the allegations in those cases differ significantly from Plaintiff's allegations. The most that Plaintiff alleges regarding her experience on BCBSMA's website is that "the tracking technologies revealed information regarding Plaintiff's status as a BCBS-MA policyholder and her communications with BCBS-MA regarding her policy by revealing the substance of communications on BCBS-MA webpages on the MyBlue patient portal." AC ¶ 164. This is vastly different from the allegations in the cases upon which Plaintiff relies, where courts

determined that specific information alleged to have been shared through *hospital and healthcare provider* (not health plan) websites constituted "facts of a highly personal or intimate nature."[3]

Plaintiff also mischaracterizes the Massachusetts Supreme Judicial Court's ruling in *Vita v. New England Baptist Hospital*, one of Plaintiff's multiple other pending cases. 494 Mass. 824, 849 (2024). Significantly, the court in that case did not opine as to whether the facts as alleged by Plaintiff were sufficient to state a viable MRPA claim. In referencing the potential that "statutory and common-law protections" might exist that are "more directly applicable to misrepresentations or misuse of private medical information," notably, the court cited to the *Tenet* decision; in *Tenet*, the plaintiff specifically alleged that information about her medical conditions, treatments, and appointment times and locations were transmitted to third parties.[4] *Id.* The Opposition's speculations about what unspecified communications *might* entail, instead of specific factual allegations about sharing information of a "highly personal or intimate nature" in cases like *Tenet*, reinforces the failures of the MRPA claim here. *See* Mot. at 13-14.

---

[3] *See Tenet*, 731 F. Supp. 3d at 147-148 (plaintiff alleged disclosure of healthcare-related information over multiple visits to hospital website, including plaintiff's "identity, patient status, request for medical treatment, health conditions and treatments, and appointment time and location," all of which "constitute[d] information of a 'highly personal or intimate nature'"); *Doe v. Boston Medical Center Corp.*, No. 2384CV00326-BLS-1, 2023 WL 7105628, at *2 (Mass. Super. Sept. 14, 2023) (involving "the alleged disclosure of personal and healthcare-related information over multiple website visits," including searches for "local anesthesia," "hernia repair" and treating urologists); *Doe v. Emerson Hospital*, No. 2277CV01000, 2023 WL 8869624, at *1 (Mass. Super. Nov. 22, 2023) (involving plaintiff's "queries about treatment for a concussion" and information about his status as an Emerson patient, including information about his doctors, conditions, treatment, and appointments); *Doe v. Partners Healthcare*, No. 1984CV01651-BLS1 (Mass. Super. Ct. Nov. 20, 2020) (involving alleged sharing of plaintiff's health information, including contents of patient communications with health care providers); *cf. Alves v. BJ's Wholesale Club*, 2023 WL 4456956, at *6-7 (Mass. Super. June 21, 2023) (allowing MRPA claim to proceed because another claim would survive motion to dismiss but expressing skepticism that plaintiff's "allegations are sufficient to state a claim for invasion of privacy" given failure "to allege clearly that BJ's was able to connect his identity to the data collected or that the data collected was particularly personal or sensitive").

[4] The cases Plaintiff relies upon in support of her intrusion upon seclusion theory under the MRPA are inapt. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 602 (9th Cir. 2020) (finding plaintiff stated a claim for intrusion upon seclusion under California law because "Facebook's privacy disclosures at the time allegedly failed to acknowledge its tracking of logged-out users," an allegation Plaintiff does not make here); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022) (same, and stating, "[u]nder California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is").

## IV. Plaintiff Fails to State a Claim for Breach of Fiduciary Duty (Count IV).

Plaintiff's Opposition posits that health insurers owe a limited fiduciary duty to healthcare consumers arising from consumers' communications about their medical care with insurers. Opp. at 16. However, Plaintiff finds no support in the case law she cites. In *Warsofsky v. Sherman*, a case decided over 70 years ago, the court identified several types of fiduciary relationships, including between an "attorney and client, trustee and beneficiary, physician and patient, business partners, promoters or directors and a corporation, and employer and employee," but remained silent as to insurers. 93 N.E.2d 612, 615 (Mass. 1950).

Plaintiff's single case from two decades ago concerning the existence of a "limited" fiduciary duty is also distinguishable. In *Wilson Farm*, the Court recognized that the insurance agent-insured relationship "is not normally considered to be fiduciary in nature," finding only that a fiduciary duty *may* have existed, and denied defendant's motion for summary judgment. 2002 Mass. Super. LEXIS 376, at *22-26 (Super. Ct. Oct. 31, 2002). There, plaintiff and defendant's agent had a prior relationship, had multiple discussions about insurance-related issues, and reviewed defendant's bills together each year. *Id.* at *24-25. The court reasoned that while a fiduciary relationship "can develop where one party reposes its confidence in another," a "plaintiff alone, by reposing trust and confidence in the defendant, cannot thereby transform a business relationship into one which is fiduciary in nature." *Id.* at *23-25 (emphasis added) (citation omitted). Plaintiff's conclusory allegations in the Amended Complaint amount to nothing more than a unilateral attempt to "transform a business relationship into one which is fiduciary in nature," and as such, Count IV fails.[5]

---

[5] Plaintiff adds a footnote, arguing that "[o]ther cases involving the surreptitious use of tracking technologies on healthcare websites are at least informative." Opp. at 16, n. 18. However, the relationships in each of those cases

## V. Plaintiff Fails to State A Claim for Negligence (Count V).

Plaintiff's arguments concerning Count V rely on her unsupported assertion, refuted above, that a fiduciary duty exists between health insurers and insureds. Opp. at 18. Notably, Plaintiff does not dispute that her losses are purely economic. *Compare id.*, *with* Mot. at 15 (arguing that Plaintiff has failed to show that she suffered any personal injury or property damage). For the reasons set forth above, because Plaintiff has not alleged a special relationship, and recovery of economic loss is prohibited, dismissal of her negligence claim is proper. *See infra* § IV.

Plaintiff also fails to allege the elements of her negligence claim. As to duty, Plaintiff argues that "the scope of a duty [] *may* be informed by policies underlying privacy-related statutes." Opp. at 18 (emphasis added). However, Plaintiff must first adequately allege that a duty of care existed at all *before* directing the Court to privacy statutes to potentially inform the contours of such duty. *See, e.g.*, *Juliano v. Simpson*, 962 N.E.2d 175, 180 (Mass. 2012). That the Amended Complaint does not do so is affirmed by the conclusory allegation that BCBSMA "owed a duty to Plaintiff and the Class to exercise reasonable care to secure, safeguard, and protect their highly sensitive Private Information," followed by citation to some privacy-related statutes. AC ¶¶ 211, 214. An allegation of a duty sufficient to state a claim under Massachusetts law cannot be made—as Plaintiff attempts here—based on a conclusory allegation accompanying citations to privacy-related statutes. *See* Mot. at 15-16.[6]

As to causation, Plaintiff failed to allege that she received any unwanted targeted advertisements, much less that any such receipt was caused by alleged disclosure of her

---

involved a patient and hospital—a treating healthcare provider—which is more akin to a physician-patient relationship than the insurer-insured relationship at issue here. *Id.*

[6] Moreover, Plaintiff has failed to adequately allege that a fiduciary duty existed between Plaintiff and BCBSMA. *See infra* § IV.

unspecified "confidential communications" to any particular third parties. Even had Plaintiff alleged a causal link, countless external sources might have caused such advertisements, making it impossible to establish whether BCBSMA's conduct was, in fact, the sole cause.

Finally, in an attempt to plead damages to support a negligence claim, the Opposition relies on vague assertions, unsupported by specific allegations, that BCBSMA and unspecified third parties "monetize . . . intercepted communications." Opp. at 19. However, Plaintiff ignores the breadth of case law requiring that alleged damages be quantifiable, and the paucity of her own factual allegations to support that conclusion. *See, e.g.*, *Portier v. NEO Tech. Sols.*, No. 3:17-CV-30111-TSH, 2019 WL 7946103, at *15 (D. Mass. Dec. 31, 2019), *report and recommendation adopted*, 2020 WL 877035 (D. Mass. Jan. 30, 2020) ("Massachusetts requires a *measurable* loss as necessary element of a negligence claim") (emphasis added). Plaintiff's vague assertions that BCBSMA and unidentified third parties are using some of her (unspecified) information in an unquantifiable, unspecified way to cause her purported, unknown injuries cannot support a claim.

## VI. <u>Plaintiff Fails to State a Claim for Breach of Confidence (Count VI).</u>

Plaintiff concedes that no Massachusetts court has recognized a breach of confidence cause of action arising out of an insurer-insured relationship, but nonetheless asks this Court to create a new cause of action and then determine that she has stated such a claim. Neither request is in order. Opp. at 17. While Massachusetts courts have recognized a claim for breach of confidence in the physician-patient context, no court has *ever* recognized such a claim in the context of an insurer-insured relationship. *Id.* (citing *Alberts v. Devine*, 395 Mass. 59, 68-69 (1985)). No basis is set out in the Opposition for the creation—and application of new law—by this Court.

## VII. Plaintiff Fails to State a Claim for Breach of Contract (Count VII).

Plaintiff argues that BCBSMA breached its own privacy policy when allegedly disclosing website communications to third parties, and that this amounts to a breach of contract between Plaintiff and BCBSMA. Opp. at 20. The Opposition fails to address, *inter alia*, BCBSMA's arguments that: (a) Plaintiff failed to allege with any specificity the type of "Private Information" collected, nor how BCBSMA required her to provide such information, nor that the alleged collection of such information was a condition of any written contract between the Parties; and (b) Plaintiff fails to allege the requisite element of mutual assent. Mot. at 18-19. As to the latter, Plaintiff argues in the Opposition that she "plausibl[y]" might have assented to BCBSMA's privacy policies, and she conjectures that Plaintiff's use of the MyBlue portal "almost certainly involved assent" to such policies—but these bald assertions do not appear in Plaintiff's pleadings. These pleading deficiencies require dismissal of Plaintiff's breach of contract claim.

## VIII. Plaintiff Fails to State a Claim for Unjust Enrichment (Count VIII).

The Amended Complaint fails to allege either that Plaintiff *knowingly* conferred a benefit to BCBSMA **or** that she reasonably expected compensation for allegedly providing her unspecified information to BCBSMA. Both allegations are required to state a claim for unjust enrichment. Moreover, Plaintiff concedes that she failed to allege that a reasonable person would expect compensation in a similar situation. *Compare* Opp. at 20, *with* Mot. at 20.

For the foregoing reasons, and because any further amendment would be futile, the Court should dismiss the Amended Complaint in its entirety, with prejudice.[7]

---

[7] Dismissal with prejudice is warranted because Plaintiff has been on notice of the many deficiencies in her pleading since BCBSMA moved to dismiss Plaintiff's Superior Court complaint in July 2023, and allowing Plaintiff to replead her claims a third time is unlikely to lead to a different result. *See, e.g.*, *Segelman v. City of Springfield*, 561 F. Supp. 2d 123, 125 (D. Mass 2008) (dismissal with prejudice warranted where plaintiff "has had an opportunity to review and amend the complaint, and where its contents still cannot withstand analysis").

Respectfully submitted,

Dated: May 1, 2025

*/s/ Daniel S. Savrin*
Daniel S. Savrin, Bar No. 555434
Wayne E. George, Bar No. 656286
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA 02110-1726
Telephone: +1.617.341.770
Facsimile: +1.617.341.7701
daniel.savrin@morganlewis.com
wayne.george@morganlewis.com

Ezra D. Church (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103
Telephone: +1.215.963.5000
Facsimile: +1.215.963.5001
ezra.church@morganlewis.com

*Attorneys for Blue Cross and Blue Shield of Massachusetts, Inc. and Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on May 1, 2025.

*/s/ Daniel S. Savrin*
Daniel S. Savrin