UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| KATHLEEN VITA,<br><br>Plaintiff,<br><br>v.<br><br>BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS, INC. and BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS HMO BLUE, INC.,<br><br>Defendants. | ) | Civil No. 25-10420-LTS |

ORDER ON DEFENDANTS' MOTION TO DISMISS (DOC. NO. 12)

October 17, 2025

SOROKIN, J.

Kathleen Vita filed this putative class action against Blue Cross and Blue Shield of Massachusetts and its subsidiary (collectively, "BCBS-MA"), alleging that BCBS-MA installed on its website various tracking software in conjunction with third parties (e.g., Google, Meta, LinkedIn) in violation of the federal Electronic Communications Privacy Act and state law.[1] Doc. No. 1-1.[2] BCBS-MA moved to dismiss, arguing, among other things, that Vita failed to make sufficient factual allegations about her own use of its website to support any of her claims for relief. Doc. No. 13 at 8–9. The Court agrees that Vita's threadbare allegations of her own

[1] Specifically, Vita raises seven state-law claims: unfair and deceptive practices under Chapter 93A, violation of the Massachusetts Right to Privacy Act, breach of fiduciary duty, negligence, breach of confidence, breach of contract, and unjust enrichment. Doc. No. 1-1 ¶¶ 179–245.

[2] Citations to "Doc. No. __" reference documents appearing on the court's electronic docketing system; pincites are to the page numbers in the ECF header. Vita's first amended complaint (Doc. No. 1-1), which was filed in state court before BCBS-MA removed to federal court, is the operative complaint. See Doc. No. 1.

use of the BCBS-MA website are insufficient to make her claims for relief plausible. Accordingly, BCBS-MA's motion to dismiss (Doc. No. 12) is ALLOWED, with leave for Vita to file a second amended complaint as detailed below.

## I. DISCUSSION

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint need not be highly detailed, but they must be more than "an unadorned, the-defendant-unlawfully-harmed-me allegation." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not 'show[n]' . . . 'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Vita's amended complaint spans seventy pages and includes detailed explanations of the relevant technology, the BCBS-MA website's operation, and how private personal health information could be obtained through use of the tracking software. But the allegations specific to Vita—regarding what she did on the website; what, if any, private health information she shared; and whether or how such information was intercepted—are sparse to say the least. With respect to her own experience, Vita alleges only the following:

- Vita is a BCBS-MA customer and "regularly used the BCBS-MA Website to obtain information about her health insurance benefits, including by accessing the MyBlue patient portal." Doc. No. 1-1 ¶ 11.

- "The webpages [Vita] visited on the BCBS-MA Website were among the webpages on which BCBS-MA embedded code for various tracking technologies." Id. ¶ 12.
- Vita "did not consent to or authorize the use of her Private Information by third parties or BCBS-MA enabling third parties to access and use such Private Information."[3] Id. ¶ 13.
- "[T]he tracking technologies revealed information regarding [Vita]'s status as a BCBS-MA policyholder and her communications with B[C]BS-MA regarding her policy by revealing the substance of communications on BCBS-MA webpages on the MyBlue patient portal." Id. ¶ 164.
- "[T]hrough the above-described tracking technologies, after BCBS-MA intercepted communications, the intercepted information was, in turn, used by third parties, such as Facebook and Google, to 1) place [Vita] in specific health-related categories based on their past, present, and future health conditions and 2) target [Vita] with particular advertising associated with their specific health conditions." Id. ¶ 166.

Vita also provides examples of the BCBS-MA website's use of tracking technologies, which she prefaces with a disclaimer that the examples do not necessarily represent her own experience:

> The further examples presented below do not necessarily reflect webpages [Vita] personally visited but are presented for illustrative purposes. To maintain her medical privacy, [Vita] does not describe in this complaint the specific pages she visited, but [Vita] visited webpages within the categories of pages described below into which B[C]BS-MA embedded Meta Pixel, Google Analytics, and other

[3] The amended complaint defines "Private Information" as individually identifiable health information and protected health information. Doc. No. 1-1 ¶ 1.

> tracking technologies. Her communications with B[C]BS-MA, including Private Information, were intercepted similarly to the illustrative examples set forth below.

Id. ¶ 83 (emphasis added); see also id. ¶ 91 n.6 (explaining that an "addiction" example detailed in the complaint "does not reflect [Vita's] personal activity on the website").

The thrust of Vita's complaint is that BCBS-MA, through its website, intercepted and disclosed some of Vita's private information to third parties without her consent in violation of various federal and state laws. But her factual allegations fall short of making that claim plausible because she simply alleges virtually nothing regarding her private or confidential information. Vita's factual allegations establish, at most, that, at some unspecified time, BCBS-MA revealed to some third party or parties the fact that Vita is a BCBS-MA policyholder. Id. ¶ 164. But "policyholder status," on its own, is not the kind of sensitive information the disclosure of which supports any of Vita's various claims for relief.[4] Vita's more general allegation that her "communications . . . regarding her policy" were revealed is inadequate because Vita declines to provide any information about or examples of the content of those communications. Id. ¶¶ 83, 164. This is information within Vita's possession that she has chosen, for privacy reasons, not to reveal.[5] Id. ¶ 83; Doc. No. 15 at 14.

---

[4] Vita's argument that "patient status" is protected information is unavailing because Vita's amended complaint does not allege that her "patient status" was revealed. Doc. No. 15 at 15.

[5] Vita contends that she should not be required to make highly particularized allegations regarding the "precise text" that BCBS-MA allegedly intercepted because she did not know, at the time she used the website, that her communications were being intercepted through use of tracking software. Doc. No. 15 at 12 n.3. Whether Vita knew about the intercepting when she used the BCBS-MA website does not affect whether she can plead the facts necessary to describe her experience with sufficient specificity to satisfy the pleading standard.

In short, Vita has failed to make sufficient factual allegations about her own use of the BCBS-MA website to state any claim.[6] For this reason only, BCBS-MA's motion to dismiss is allowed.[7]

Vita's submissions indicate that she chose to withhold certain factual allegations, suggesting to the Court that Vita could cure the deficiencies in her amended complaint. Doc. No. 1-1 ¶ 83; Doc. No. 15 at 12–14. Vita explains that the absence of detail as to her own experience arises from a decision not to reveal private health information. Doc. No. 15 at 12–14. She contends that she should not have to give up her private information in order to vindicate her

---

[6] The cases Vita cites are not to the contrary—and are not binding on this Court in any event. Doc. No. 15 at 14. In Doe v. Emerson Hospital—an unpublished order of a single justice of the Massachusetts Superior Court—the plaintiff had included more specific factual allegations than Vita makes here, including that (1) he used the defendant's website to "transmit information about his treatment at [the defendant hospital], which included queries about treatment for a concussion," and (2) his communications "contained information about his status as a[] . . . patient [of the defendant hospital], including information about his doctors, conditions, treatment, and appointments." Doe v. Emerson Hosp., No. 2277CV01000, 2023 WL 8869624, at *1 (Mass. Super. Ct. Nov. 22, 2023). In the Meta Pixel Tax Filing Cases, the plaintiffs alleged, in support of their California law claims, the specific categories of information they disclosed on tax filing websites that was surreptitiously shared with Meta. In re Meta Pixel Tax Filing Cases, 724 F. Supp. 3d 987, 1004 (N.D. Cal. 2024). The supplemental authorities Vita noticed further support the proposition that a plaintiff must plead specific factual allegations about how their use of a defendant's website gave rise to their claim. Doc. No. 24. For instance, in Williams v. TMC Health, the district court denied a second motion to dismiss because, although the first complaint "failed to make clear what 'content' Defendant had disclosed or used, the [amended complaint] remedies this deficiency by providing facts to support the nature of the content disclosed and to support the plausibility of disclosure." Williams v. TMC Health, No. 23-cv-000434, slip. op. at 11 (D. Ariz. Aug. 19, 2025), Dkt. No. 46; Doc. No. 24-1 at 11.

[7] The dearth of factual allegations regarding Vita's individual use of the BCBS-MA website also raises concerns about Vita's Article III standing to bring her claims—in particular, whether she has plausibly pleaded a "concrete and particularized" injury in fact by "adduc[ing] facts demonstrating that [she herself] is adversely affected." See Hochendoner v. Genzyme Corp., 823 F.3d 724, 731–34 (1st Cir. 2016) ("The particularization requirement . . . necessitates that a plaintiff has been affected 'in a personal and individual way' by the injurious conduct." (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016))). Neither party raised this issue in their briefing on the motion to dismiss. Because the Court allows BCBS-MA's motion to dismiss, the Court need not analyze whether Vita plausibly alleged standing in the present version of her pleading.

privacy rights. Id. at 14. Of course, neither the law nor the Court impose such a Hobson's choice. If Vita must divulge some information she considers private in order to provide sufficiently detailed factual allegations to make her claims for relief plausible as the law requires, Iqbal, 556 U.S. at 678, Vita may file her complaint under seal with a redacted copy on the public record. Fed. R. Civ. P. 5.2(d)–(f); L.R. 83.6.11(b)(4).

Accordingly, Vita is granted leave to file a second amended complaint within fourteen days of this Order. Fed. R. Civ. P. 15(a)(2). In light of the Court's basis for granting BCBS-MA's motion to dismiss, Vita's revision of the amended complaint (Doc. No. 1-1) is limited to providing additional allegations regarding her interactions with the BCBS-MA website.[8] If Vita elects to file a second amended complaint, she (1) may file the revised complaint under seal with a redacted copy on the public docket; (2) shall provide an unredacted copy to BCBS-MA, subject to the limitation that BCBS-MA shall not publicly disclose the sealed information nor use it for purposes other than defending this case; and (3) shall file a redlined copy of the revised complaint (comparing the second amended complaint to the first amended complaint) under seal with a copy to BCBS-MA.

If Vita files a second amended complaint, BCBS-MA will have fourteen days thereafter to file a responsive pleading, whether an answer or a motion to dismiss. If BCBS-MA elects to file a renewed motion to dismiss, it can either (1) file a supporting memorandum in accordance with the standard page limit or (2) file a supplemental memorandum, limited to six pages, that addresses Vita's amendments and otherwise incorporates by reference its present memorandum (Doc. No. 13). If BCBS-MA chooses the second option, Vita's response will be limited to six

[8] The Court limits the scope of Vita's leave to amend in this manner because, if Vita thought BCBS-MA's other legal arguments in support of its motion to dismiss required amendment, she could have sought leave to amend her complaint. Fed. R. Civ. P. 15(a)(2). She did not do so.

pages, and BCBS-MA's reply limited to three pages. In either case, Vita's response and BCBS-MA's reply will be due fourteen days after the filing to which they respond.

## II. CONCLUSION

For the foregoing reasons, BCBS-MA's motion to dismiss (Doc. No. 12) is ALLOWED. Vita is granted leave to file a second amended complaint in accordance with the directions specified in this Order, due by October 31, 2025.

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge