**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| KATHLEEN VITA,<br><br>Plaintiff,<br><br>v.<br><br>BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS, INC. and BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS HMO BLUE, INC.,<br><br>Defendants. | Case No. 1:25-cv-10420-LTS |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS, INC. and BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS HMO BLUE, INC.'S**
**MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Pursuant to the Court's Order (Dkt. 26) allowing Defendants Blue Cross and Blue Shield of Massachusetts, Inc. and Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc.'s ("BCBS-MA") Motion to Dismiss, BCBS-MA submits this supplemental memorandum addressing Plaintiff Kathleen Vita's amendments in her Second Amended Complaint ("SAC") (Dkt. 27) and otherwise incorporates BCBS-MA's Motion to Dismiss and its supporting Memorandum ("Motion") (Dkts. 12, 13). Plaintiff's SAC—her third attempt to craft a sufficient pleading—reinforces that Plaintiff cannot state a claim for relief. The SAC fails to cure the legal deficiencies of Plaintiff's prior pleadings, including her original and deficient 2023 Superior Court Complaint. The added allegations of purported tracking of Plaintiff's personal information on BCBS-MA's website are facially insufficient, grounded in conjecture, and contradicted by other allegations in the SAC. The SAC should be dismissed in its entirety, with prejudice.

## I. <u>Plaintiff's New Allegations Rely on Conjecture and Argument, Not Plausible Facts.</u>

Plaintiff added eighteen paragraphs to purportedly describe BCBS-MA's interceptions of Plaintiff's "healthcare communications." SAC ¶¶ 112-129. These allegations fail to bridge the gaps highlighted in BCBS-MA's prior briefing in support of its Motion to Dismiss and identified in the Opinion and Order allowing BCBS-MA's Motion. Dkt. 13 ("Mot."); Dkt. 18 ("Reply"); Dkt. 26 ("Op."). Through her additions, Plaintiff attempts to allege that BCBS-MA intercepted her "communications" on the MyBlue login page using Google DoubleClick, LinkedIn Insight, and Meta Pixel so that third parties could use the "communications" for marketing purposes. *Id.* ¶ 113. As before, Plaintiff still "declines to provide any information about or examples of the content of those communications." Op. at 4. To the extent (albeit left to surmise) that Plaintiff may be opaquely alleging that her "communications" on the login page are entry of her username and password, courts routinely find such allegations insufficient to state a claim. *See, e.g.*, *In re Carrier*

*IQ, Inc.*, 78 F. Supp. 3d 1051, 1083-84 (N.D. Cal. 2015) (holding that while "detailing" procedures such as "entering a user name and password" "may be a prerequisite to engaging in communications . . . the credentials themselves do not reveal the substance, purport, or meaning of any communication" (citing *Gilday v. Dubois*, 124 F.3d 277, 281, 296 (1st Cir. 1997)).

Beyond the vague login page allegations, Plaintiff's other added allegations concern "communications" purportedly intercepted on the MyBlue portal when she reviewed Explanation of Benefits (EOB) documents. SAC ¶¶ 116-129. These claims are not only based on conjecture, but are also contradicted by other allegations in the SAC. Plaintiff states in conclusory fashion that BCBS-MA intercepted her "private healthcare communications for marketing purposes," focusing exclusively on BCBS-MA's alleged use of Google DoubleClick code. *Id.* ¶ 120. Plaintiff devotes most of the added paragraphs to describing the contents of EOBs made available to her through the MyBlue portal. But, crucially, as before, Plaintiff fails to allege the manner of the purported interception—here, *how* the contents of her EOBs purportedly were intercepted. *Id.* ¶¶ 114-119, 121, 123, 125. Plaintiff broadly alleges interception of "communications between Plaintiff and BCBS-MA regarding EOBs" but resorts to speculation about how the MyBlue portal operates, asserting that "there would have been no reason for BCBS-MA to embed and deploy Google DoubleClick on the BCBS-MA webpages Plaintiff visited inside the MyBlue Portal, where she accessed her EOBs, other than to intercept her private healthcare communications for marketing purposes." *Id.* ¶ 120.[1] In doing so, Plaintiff essentially concedes that she has no facts to support her claims. Arguments about what "would have been" true are not facts sufficient to support a

---

[1] Plaintiff repeatedly alleges that BCBS-MA intercepted her communications. *See, e.g.*, SAC ¶¶ 113, 114, 119, 120. For the reasons set forth in BCBS-MA's Motion, a party to a communication cannot "intercept" a communication directed to it and cannot be held liable for "eavesdropping" upon itself. *See* Mot. at 5-7.

plausible claim for relief.

Neither surmise, nor conjecture, nor argumentation about what "could" or "would have been" true will suffice to meet the plausibility standard—factual allegations are required to state a claim. Courts in this Circuit routinely reject allegations based on surmise and conjecture, and the Court should do the same here. *Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61, 68 (1st Cir. 2004). As this Court aptly noted, "[w]hether Vita knew about the intercepting when she used the BCBS-MA website does not affect whether she can plead the facts necessary to describe her experience with sufficient specificity to satisfy the pleading standard." Op. at 4 n.5. She cannot. Plaintiff tacitly admits that three years after filing her initial complaint, she still lacks sufficient information to plead specific factual allegations to support her claims. *See, e.g.*, SAC ¶ 114 (acknowledging that ***"[b]efore discovery, Plaintiff cannot know with certainty the full scope of BCBS-MA's deployment, on all dates during the Class Period, of tracking technologies on the dynamically generated pages Plaintiff accessed after logging into the patient portal***" (emphasis added) and then relying on allegations based on conjecture to support her claim).

Plaintiff's addition of formulaic recitation of terms of legal import (that are beyond the scope of the permitted amendment) also does not alter or cure the failure to allege *factual* allegations sufficient to state her claims. *Compare* SAC ¶ 120 (claiming that the alleged interception was done "for the primary purpose of committing criminal and tortious acts") *with* Op. at 6 (instructing that any amendment be "limited to providing additional allegations regarding her interactions with the BCBS-MA website.")

After three attempts at pleading her claims, Plaintiff's added allegations fail to move any of her proposed causes of action beyond mere conjecture. The SAC should be dismissed. *See A.G. by and through Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) ("When allegations,

though disguised as factual, are so threadbare that they omit any meaningful factual content, we will treat them as what they are: naked conclusions."); *Hajri v. Walsh*, No. 21-11448-WGY, 2022 WL 16848872, at *2 (D. Mass. Sep. 8, 2022) (holding that Plaintiff's conclusory and speculative allegations were insufficient to state a claim upon which relief could be granted).

## II. <u>The SAC's New Allegations Are Contravened by Its Existing Allegations.</u>

As noted above, Plaintiff now argues that because she (1) alleges that BCBS-MA enabled Google DoubleClick on its MyBlue portal and (2) alleges that Google DoubleClick is "designed exclusively for managing and delivering digital ads," it is fair to assume that every "communication," including health information, in the MyBlue portal was necessarily intercepted and shared with Google. *See* SAC ¶¶ 114, 120. This speculation, however, contrasts starkly with the DoubleClick screenshots embedded elsewhere in the SAC. Those screenshots of code reflect that what DoubleClick allegedly captures are URLs showing that a user views *certain types* of pages on the BCBS-MA website, such as the "My Plan," "My Claims," "Claim Detail," or "My Medications" pages—not the actual *contents* of the pages.[2] SAC ¶¶ 107-110. Those screenshots reflect that surface-level URL data (not contents) allegedly are captured by the technologies at issue. In other words, the screenshots directly contradict Plaintiff's speculation that her health information was intercepted. In the face of those allegations about DoubleClick practices, Plaintiff's conjecture must be rejected. *See id.*; *Church v. United States*, 772 F. Supp. 3d 223, 234 (D. Mass. 2025) (granting motion to dismiss plaintiff's claim for invasion of privacy because complaint contradicted itself "as to whether [defendant] engaged in 'gathering' or 'dissemination'" of plaintiff's private information).

---

[2] While these allegations relate to "users" generally and not to Plaintiff specifically, they are presented as exemplars of how DoubleClick operates. *See* SAC ¶ 83.

That point is reinforced by the absence of any specific factual allegations showing that Plaintiff's health information, from the MyBlue portal or otherwise, actually was *transmitted* to any third party. At most, the screenshot-related allegations in Paragraphs 107-110 might support the inference that a very brief description (that contained in the website URL) of the webpages a user visits on MyBlue—such as the "My Plan" page—was captured. Such an allegation, even if it were made specifically about Plaintiff's own experience (which it is not), falls short of what is required under Rule 12(b)(6). *See* Mot. at 5; Reply at 8-9; *Boudreau v. Lussier*, 901 F.3d 65, 79 (1st Cir. 2018) (whether screen-capture surveillance software "contemporaneously intercepted [the plaintiff's] communications requires more than . . . the concept of capturing a screenshot").

For a third time, Plaintiff has "failed to make sufficient factual allegations about her own use of the BCBS-MA website to state any claim." Op. at 6. The SAC should be dismissed.

## III. Plaintiff's Claims Fail for the Reasons Set Forth in BCBS-MA's Motion to Dismiss.

Plaintiff's added allegations remain insufficient to state a claim against BCBS-MA under any of the SAC's causes of action. In particular, Plaintiff still cannot state a claim under the Electronic Communications Privacy Act ("ECPA") as her amendments do not cure her failure to allege in her prior pleading an unlawful interception or use of a device—both of which are fatal to her claim. *See* Mot. at 12-16. Plaintiff also fails to allege that any of the EOB contents were intercepted, as opposed to mere URL addresses of the webpages where she viewed her EOBs. "[P]ages and content viewed by Plaintiff" are "precisely the type of non-record information that courts consistently find do not constitute 'contents' under the [ECPA]" because they do "not convey the substance or meaning of any message." *Goldstein v. Luxottica of Am., Inc.*, No. 21-80546,2021 WL 4093295, at *2 (S.D. Fla. Aug. 23, 2021) (quoting *Jacome v. Spirit Airlines, Inc.*, No. 2021-000947-CA-01, 2021 WL 3087860, at *4 (Fla. Cir. Ct. June 17, 2021)). Beyond those

fatal flaws, the SAC consistently contradicts the notion of a criminal or tortious purpose by repeatedly admitting that any interception was for "commercial and marketing purposes." SAC ¶¶ 122, 124; *see McManus v. Tufts Med. Ctr., Inc.*, No. 25-CV-10008-ADB, 2025 WL 2778025, at *3 n.1 (D. Mass. Sep. 29, 2025) (Burroughs, J.) (rejecting crime-tort exception and collecting cases where allegations merely alleged "financial motives"); *Goulart v. Cape Cod Healthcare, Inc.*, No. CV 25-10445-RGS, 2025 WL 1745732, at *3 (D. Mass. June 24, 2025) (Stearns, J.) (same); *see also* Mot. at 13.

Reinforcing that dismissal of the SAC is compelled, Plaintiff's added allegations fail to meet the standards set by the authorities she cites that involve health care providers. For example, in *Williams v. TMC Health*, the plaintiff alleged "more than just the address of pages visited on Defendant's website. Indeed, the SAC alleges Defendant intercepted and disclosed the particular words and phrases typed into the search bar on the website related to specific conditions, symptoms, treatments, and physicians." No. 23-cv-000434, slip. op. at 10 (D. Ariz. Aug. 19, 2025) (cited in Dkt. 24-1). Further, in *Doe v. Tenet Healthcare Corp.*, the plaintiff alleged that she actually "began noticing targeted online advertisements related to her health conditions" rather than suggesting it was a mere possibility. 731 F. Supp. 3d 142, 147 (D. Mass. 2024). Here, the SAC fails to offer any factual allegations that are at all comparable to these cases, instead retaining the same shortcomings of the First Amended Complaint. *See* Op. at 5 n.6; Mot. at 11-12.

For the foregoing reasons, and because any further amendment would be futile, the Court should dismiss the Second Amended Complaint in its entirety, with prejudice.[3]

---

[3] Allowing Plaintiff to replead her claims a fourth time is unwarranted and without productive purpose. *See, e.g.*, *Segelman v. City of Springfield*, 561 F. Supp. 2d 123, 125 (D. Mass. 2008) (dismissal with prejudice warranted where plaintiff "has had an opportunity to review and amend the complaint, and where its contents still cannot withstand analysis").

Respectfully submitted,

Dated: November 14, 2025

*/s/Daniel S. Savrin*
Daniel S. Savrin, Bar No. 555434
Wayne E. George, Bar No. 656286
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA 02110-1726
Telephone: +1.617.341.770
Facsimile: +1.617.341.7701
daniel.savrin@morganlewis.com
wayne.george@morganlewis.com

Ezra D. Church (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103
Telephone: +1.215.963.5000
Facsimile: +1.215.963.5001
ezra.church@morganlewis.com

*Attorneys for Blue Cross and Blue Shield of Massachusetts, Inc. and Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on November 14, 2025.

*/s/Daniel S. Savrin*
Daniel S. Savrin