**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| KATHLEEN VITA,<br><br>For herself and the Class,<br><br>v.<br><br>BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS, INC. AND BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS HMO BLUE, INC.,<br><br>Defendant. | **Case No. 1:25-cv-10420-LTS** |

# PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

SHAPIRO HABER & URMY LLP
Edward F. Haber (BBO #215620)
Michelle H. Blauner (BBO #549049)
Patrick J. Vallely (BBO #663866)
One Boston Place
Suite 2600
Boston, MA 02108
(617) 439-3939 – Telephone
(617) 439-0134 – Facsimile
ehaber@shulaw.com
mblauner@shulaw.com
pvallely@shulaw.com

***Counsel for Plaintiff***

The Court, in its Order on Defendants' Motion to Dismiss (Doc. No. 26) ("Order"), held that Plaintiff's "allegations of her own use of the BCBS-MA website [were] insufficient" because she "failed to make sufficient allegations about her own use of the BCBS-MA website to state any claim." *Id.* at 1-3. The Court granted Plaintiff leave to amend to "provid[e] additional allegations regarding her interactions with the BCBS-MA website." *Id.* at 6. Plaintiff's new allegations (contained in paragraphs 112 through 129 of the Second Amended Complaint ("SAC", Doc. No. 27)) amply describe her interactions on the BCBS-MA website. In the SAC, Plaintiff details: (i) how she used the BCBS-MA website and logged into the purportedly secure portal; (ii) the types of communications she had with BCBS-MA, including her review of Explanations of Benefits ("EOB") documents inside the portal for specific medical treatments she received from particular physicians; (iii) when she had those communications; (iv) how that BCBS-MA intercepted those communications with tracking technologies; and (v) how BCBS-MA disclosed to Facebook, Google, and LinkedIn communications on the portal and later used them for marketing purposes, all without Plaintiff's knowledge or consent.

At core, in its Supplemental Memorandum in Support of its Motion to Dismiss ("Supp. Mem.," Doc. No. 28), BCBS-MA's complaint is that Plaintiff does not provide the exact contents of those communications. *Id.* at 2. But that is not what the Court asked for in its Order. The SAC responds to the Court's request for additional information regarding her interactions with the BCBS-MA website and more than adequately meets the plausibility standard; the Motion to Dismiss should be denied.

***Private Health Information.*** BCBS-MA argues that Plaintiff fails to allege BCBS-MA intercepted and disclosed "health information." Supp. Mem. at 6. BCBS-MA is vague on what it means by this phrase, but BCBS-MA's position appears to be that interceptions must transmit HIPAA-protected information for the ECPA's crime-tort exception to apply. This argument fails for two reasons:

*First*, Plaintiff used the BCBS-MA website to access EOB documents inside BCBS-MA's purportedly secure portal. SAC ¶¶ 114-17. Communications between Plaintiff and BCBS-MA in the portal regarding EOBs were HIPAA-protected. Under the HIPAA Privacy Rule, protected health

information includes communications that relate to "the past, present, or future payment for the provision of health care to an individual." 45 C.F.R. § 160.103. BCBS-MA's interception, disclosure, and subsequent use of Plaintiff's communications with BCBS-MA in the portal regarding her EOBs related to payments for the provision of health care. The deployment of tracking technologies inside a patient portal presents "significantly greater privacy issues than tracking public webpages" and supports her claim that BCBS's purpose was to disclose and later misuse of HIPAA-protected information. *See Doe v. Lawrence General Hospital*, 2025 U.S. Dist. LEXIS 195964, at *20-21, 48 (D. Mass. Aug. 29, 2025).

*Second*, disclosure or misuse of HIPAA-protected information is not the only way BCBC-MA's conduct can trigger the ECPA's crime-tort exception. Apart from alleging violations of HIPAA, Plaintiff alleges BCBS-MA intercepted communications for the purpose of committing tortious acts under Massachusetts law—torts not limited to HIPAA violations or healthcare-related communications. Plaintiff asserts a claim under the Massachusetts Right to Privacy Act ("MRPA")—as a stand-alone claim and as a basis for the ECPA's crime-tort exception. The MRPA codifies what, in other jurisdictions, is the common law tort of invasion of privacy. Plaintiff's claims under the MRPA do not require a HIPAA violation. Substantial case law construing the tort confirms that the collection, disclosure, or misuse of communications in contradiction of promises made to a party to the communication supports a claim for invasion of privacy. Doc. No. 15, at 14-15.[1] Here, BCBS-MA expressly promised Plaintiff that it would not to disclose or use her communications and identifying information. SAC ¶ 128. Plaintiff alleges that BCBS-MA's disclosures to Google, LinkedIn, and Facebook (together with information identifying Plaintiff), and BCBS-MA's later use of such intercepted communications for marketing purposes, breached those promises. Plaintiff plainly alleges an invasion of privacy here independent of whether the invasion involved HIPAA-protected communications. *See* SAC ¶¶ 26-33, 128-29.

[1] *See also In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 602 (9th Cir. 2020) (affirming invasion of privacy claim for "surreptitious data collection" that contradicted defendant's "privacy disclosures"); *In re Google Inc.*, 806 F.3d 125, 150 (3d Cir. 2015) (affirming invasion of privacy claim where Google falsely "held itself out as respecting" privacy, "assur[ing]….users" that no tracking was occurring, as such "deceit and disregard…raises different issues than tracking or disclosures alone").

***Plaintiff Pleads Sufficient Detail on the Intercepted Communications.*** BCBS-MA argues Plaintiff fails to present "specific factual allegations" of what precise "health information" was "transmitted." Supp. Mem. at 6. BCBS-MA is, in effect, arguing that Plaintiff must allege the precise transmissions sent to third parties. That contradicts the applicable plausibility pleading standard. Plaintiff's allegations regarding the substance of the intercepted communications meet that standard.

BCBS-MA points to note 5 of the Order, but the Court there imposed no such requirement. Supp. Mem. at 4. The Court noted Plaintiff should "plead the facts necessary to describe her experience with sufficient specificity," Doc. No. 26 at 4 n.5, not that she must present verbatim transcripts of her communications, which no claimant could do. Screen captures are not generated by default during website communication. Because the webpages Plaintiff visited in the portal are dynamically generated each time a policyholder accesses the portal (i.e., created in real time and specific to each user), screen captures cannot be recreated after the fact and are not archived by services like the Wayback Machine.

Defendants latch onto Plaintiffs' statement that before discovery, she cannot know "with certainty" the "full scope" of BCBS-MA's deployment of tracking technologies on the dynamically generated pages in the portal. Supp. Mem. at 3-4. This is not a concession that her allegations are "speculative" or "conjecture." Indeed, Defendants ignore Plaintiff's allegations that "Plantiff has confirmed that BCBS-MA deployed, at least, Google DoubleClick code throughout the MyBlue Portal, including the specific pages through which Plaintiff communicated with BCBS-MA." SAC ¶ 114. Of course, the absence of "certainty" on such details matters little, as that's not the pleading standard (or even the standard at trial). Instead, Plaintiff needs to only plead facts that plausibly support liability. *See Martins v. Johnson & Johnson Servs., Inc.*, 2025 U.S. Dist. LEXIS 78989, at *3 (D. Mass. Apr. 25, 2025) (plaintiff "need demonstrate plausible claims"). Plaintiff has done so.

***Plaintiff Pleads the "Content" of Intercepted Communications.*** BCBS-MA argues that Plaintiff "declines" to allege "the content of [her] communications." Supp. Mem. at 2. The SAC's factual allegations demonstrate otherwise. The ECPA defines content as "any information concerning the

substance, purport, or meaning" of the underlying communication. 18 U.S.C. § 2510(8). Plaintiff alleges in detail the substance, purport, and meaning of her communications with BCBS-MA by describing how she logged into the BCBS-MA portal (where tracking technologies were embedded) and requested and received EOB documents, which include the name of the providers, the types of services provided (medical procedures), the amount covered by BCBS-MA insurance, and Plaintiff's financial responsibility for any such services. SAC ¶¶ 112-29. BCBS-MA argues that those allegations are "based on conjecture." Supp. Mem. at 3. These new allegations are **fact** allegations, not inferences or conclusions; the Court must deem them true for purposes of this motion. *McKee v. Cosby*, 874 F.3d 54, 59 (1st Cir. 2017). BCBS-MA cannot avoid the import of **fact** allegations by rebranding them as "conjecture" or "speculation."

BCBS-MA also argues that Plaintiff's allegations reveal that only "surface-level URL data (not contents)" were intercepted. Supp. Mem. at 5. This repeats the argument BCBS-MA made in its motion (Doc. No. 13 at 7-8) that URLs are inherently non-content under the ECPA—a proposition the vast majority of courts reject under similar circumstances. Doc. No. 15 at 10-11 (collecting authorities). The "contents" element of ECPA does **not** require the interception to capture the entirety of the underlying communication. Instead, it is sufficient if the interception captures "**any** information concerning the substance, purport, or meaning" of the underlying communication. 18 U.S.C. § 2510(8) (emphasis added). This flexible definition imposes liability even where only part of the substance is revealed. Indeed, the First Circuit affirmed that the ECPA's definition of "contents" encompasses partial information about a communication, emphasizing that the "federal wiretap statute[] broadly defines 'contents.'" *In re Pharmatrak, Inc. Privacy Litig.* 329 F.3d 9, 18 (1st Cir. 2003) (quoting *Nix v. O'Malley*, 160 F.3d 343, 346 n.3 (6th Cir. 1998)). As the Sixth Circuit explained in *Nix*, the broad contents element encompasses "more than verbatim reproductions of conversations." 160 F.3d at 346 n.3. Plaintiffs have sufficiently pleaded that Defendant intercepted contents of Plaintiffs' communications under the meaning of the ECPA.

BCBS-MA's argument that it is not enough for Plaintiff to allege an interception that captures a "description" of a communication (Supp. Mem. at 6) is contrary to the ECPA's plain terms. Interceptions

of "descriptions," even without a verbatim duplication of the entire underlying communication, are sufficient to show the interception of "information concerning the substance, purport, or meaning" of Plaintiff's communications.[2] For similar reasons, the fact that the tracking technologies may not have transmitted Plaintiff's entire EOBs to third parties (Supp. Mem. at 6; *see also* SAC ¶¶ 107-10) does not mean there was no interception or actionable invasion of privacy.

***BCBS-MA's Unlawful Purpose.*** HIPAA prohibits healthcare providers from "knowingly 'disclos[ing] individually identifiable health information to another person' and provides additional penalties when a covered entity discloses the information with the intent to use it 'for commercial advantage [or] personal gain.'" *Doe v. Wellstar Health Sys., Inc.*, 2025 U.S. Dist. LEXIS 209327, at *21-22 (N.D. Ga. Aug. 21, 2025); 42 U.S.C. §1320d-6(b)(3). "A covered entity must obtain an authorization for any use or disclosure of protected health information for marketing." 45 C.F.R. §164.508(a)(3).

BCBS-MA argues that Plaintiff alleges "no facts to support her claim" that BCBS-MA intercepted communications for unlawful marketing purposes, but in fact she alleges "DoubleClick is designed ***exclusively*** for managing and delivering digital ads." SAC ¶120.[3] This supports the plausible inference that BCBS-MA intercepted communications for the purposes of a criminal or tortious disclosure to Google. If BCBS-MA means Plaintiff must plead direct evidence of BCBS-MA's state of mind, this is wrong.[4]

[2] *See Vriezen v. Infinite Health Collaborative, P.A.*, 2025 U.S. Dist. LEXIS 211708, at *17 (D. Minn. Sep. 30, 2025) ("URL that discloses a 'search term or similar communication made by the user' can be considered a communication under the statute") (citation omitted); *A.D. v. Aspen Dental Mgt., Inc.*, 2024 U.S. Dist. LEXIS 161090, at *15 (N.D. Ill. Sep. 9, 2024) (if a URL is "part of the substantive information conveyed to the recipient, then by definition it is 'content'"); *Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, 2024 U.S. Dist. LEXIS 177625, at *10 (E.D. Pa. Sep. 30, 2024) (interception of communications in portal discloses contents); *Smith v. Loyola Univ. Med. Ctr.*, 2024 U.S. Dist. LEXIS 119995, at *15 (N.D. Ill. July 9, 2024) (URL which discloses a "search term or similar communication made by the user" is contents).

[3] Plaintiff also alleges "Doubleclick […] [is the] pioneer of online, dynamically targeted advertising" and collects information to build its detailed profiles on individuals through "activity tags.," which track a user's actions on the website. "Google then associates the data collected through Doubleclick activity tags with particular individuals to serve targeted advertising…." SAC ¶¶ 47-48.

[4] *See Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 49 (1st Cir. 2012) ("smoking gun" proof on state of mind "is rarely available" at the pleading stage); *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 52-56 (1st Cir. 2013) ("high degree of factual specificity" on state of mind "is not required at the pleading stage").

BCBS-MA's related argument (Supp. Mem. at 7) that Plaintiff's allegations of commercial motives "contradict[]" her allegations of a criminal or tortious purpose is wrong for the reasons Plaintiff articulated in opposition to Defendants' motion to dismiss. Doc. No. 15 at 9-10. Indeed, as noted above, the unconsented-to marketing use of intercepted communications is a HIPAA violation for which heightened penalties apply. BCBS-MA remarkably cites Judge Burroughs's decision in *McManus v. Tufts Medical Center, Inc.,* 2025 U.S. Dist. LEXIS 191546 (D. Mass. Sep. 29, 2025), to argue that commercial and marketing motives are incompatible with criminal or tortious purposes. Supp. Mem. at 7. **Judge Burroughs, in fact, squarely rejected that argument**, joining the majority of cases to hold that a "defendant's alleged financial motivation does not necessarily defeat the application of the crime-tort exception," given that "[t]he existence of a financial motivation (on the one hand) and a criminal or tortious motivation (on the other hand) are not mutually exclusive. After all, lots of crimes and torts are moneymakers.'" *McManus*, 2025 U.S. Dist. LEXIS 191546, at *9, n.1 (quoting *Stein v. Edward-Elmhurst Health*, 2025 WL 580556, at *6 (N.D. Ill. Feb. 21, 2025)).[5]

***Conclusion.*** The Court's core concern was the amount of detail regarding Plaintiff's "own use" of the BCBS-MA's website. Plaintiff has addressed that concern. Plaintiff's allegations regarding her own experience demonstrate that BCBS intercepted her communications for the purpose of engaging in criminal and tortious acts, namely the disclosure of communications in direct contradiction of BCBS-MA's promises presented in its privacy policies (which support her claim for invasion of privacy under the MRPA and for breach of confidence), and the subsequent use of those intercepted communications for targeted advertising in violation of HIPAA, the MRPA, and BCBS-MA's promises to Plaintiff.

[5] *See also Lawrence General Hospital*, 2025 U.S. Dist. LEXIS 195964, at *54 ("The underlying motivation for many crimes and torts is to make money…. The 'broad theory that the presence of a primary financial motive inoculates a defendant from liability under the ECPA is wrong.'"); *Allen v. Midwest Express Care, Inc.*, 2025 U.S. Dist. LEXIS 151237, at *8 (N.D. Ill. Aug. 6, 2025) ("Even if Defendant argues that its motivation was for financial gain, the Court cannot separate such alleged motive from the reality that such revenue could only be gained by committing a HIPAA violation."); *Smith v. Rack Room Shoes, Inc.*, 2025 U.S. Dist. LEXIS 149750, at *13-15 (N.D. Cal. Aug. 4, 2025) ("join[ing] the majority [of] courts that have held a monetary purpose does not insulate a party from liability" under the ECPA).

Dated: November 28, 2025

Respectfully submitted,

*/s/ Patrick J. Vallely*
SHAPIRO HABER & URMY LLP
Edward F. Haber (BBO #215620)
Michelle H. Blauner (BBO #549049)
Patrick J. Vallely (BBO #663866)
One Boston Place
Suite 2600
Boston, MA 02108
(617) 439-3939 – Telephone
(617) 439-0134 – Facsimile
ehaber@shulaw.com
mblauner@shulaw.com
pvallely@shulaw.com

***Counsel for Plaintiff***

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading was filed electronically through the Court's electronic filing system and that notice of this filing will be sent to all counsel of record in this matter by operation of the Court's ECF system.

Dated: November 28, 2025

*/s/ Patrick J. Vallely*
Patrick J. Vallely